Docket No. 93472–Agenda 5–November 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BERNARD BUNCH, Appellee.

Opinion filed August 21, 2003.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant Bernard Bunch was convicted of possession of a controlled substance and sentenced to a four-year term of imprisonment. The appellate court determined that the trial court erred in denying defendant’s motion to quash arrest and suppress evidence and reversed defendant’s conviction. 327 Ill. App. 3d 979. We allowed the State’s petition for leave to appeal (see 177 Ill. 2d R. 315) and now affirm.

BACKGROUND

Defendant’s motion to quash arrest and suppress evidence proceeded simultaneously with his trial. Officer Lukensmeyer testified that at 1:10 a.m. on February 1, 2000, he was working alone in a marked police vehicle in the area of 35th Street and Wentworth Avenue in Chicago. He observed a 1990 Pontiac, which was proceeding westbound on 35th Street, slow down and come to a brief stop. Lukensmeyer did not see the car’s brake lights activate. As the Pontiac continued on its way, Lukensmeyer shined his MARS lights, his take-down lights, and his bright headlights onto the rear of the car. Lukensmeyer testified that he saw the driver lean forward twice toward the dashboard before the driver pulled the vehicle over and stopped. One other person was in the car, defendant, who was in the front passenger seat. Lukensmeyer approached the vehicle on the driver’s side and commanded to both, “Don’t move.” Lukensmeyer then asked the driver for his license. When the driver could not provide a license, Lukensmeyer asked him to step out of the vehicle and placed him under arrest. He handcuffed the driver and walked him to the rear of the car.

According to Lukensmeyer, he then walked around to the passenger side and asked defendant to exit the car and step to the rear of the vehicle, where the driver was standing. Lukensmeyer testified that he asked defendant out of the car so that he could take charge of the vehicle, 
i.e.
, because the driver was arrested Lukensmeyer was going to have the car transported to the station where it would be towed to an impound lot. At some point during the traffic stop, Lukensmeyer learned that the driver was the owner of the vehicle, but he could not recall whether this occurred before or after he asked defendant to exit the car.

Lukensmeyer testified further that after defendant exited the vehicle, he asked him, “What’s your name? Where you [
sic
] coming from?” When questioned as to why he asked defendant his name, Lukensmeyer responded, “I’m a policeman[.] I want[ed] to know who he was and I was curious to find out exactly who he was. That’s all.”

Defendant provided his name and additionally asked Lukensmeyer why the driver was being arrested. Lukensmeyer answered defendant’s question. During this conversation, in which the two men were about one foot apart, Lukensmeyer twice shined his flashlight in defendant’s face. Lukensmeyer explained that when he is working nights, he shines his flashlight in everyone’s face because there is a “[s]trong possibility they may have something in their mouths.” Lukensmeyer denied that he questioned defendant merely to see if there was anything in defendant’s mouth. Both times Lukensmeyer shined his flashlight in defendant’s face, he observed a small, clear plastic item, containing something white, in defendant’s mouth. Based on 35 years of experience as a police officer and his participation in more than 2,000 narcotics arrests, Lukensmeyer believed that the white substance was either heroin or cocaine. Lukensmeyer informed defendant he was under arrest, and ordered him to spit the object out of his mouth, which he did. Lukensmeyer recovered one plastic bag containing a white powder. Lukensmeyer handcuffed defendant and called for assistance. During his search of the Pontiac, Lukensmeyer recovered two similar plastic bags, also containing what he believed to be heroin, from a space in the dashboard. At this point, according to Lukensmeyer, defendant made an unsolicited statement that “[a]ll the heroin you found is mine.” Lukensmeyer later tested the brakes on defendant’s vehicle, which were working properly. The parties stipulated to the chain of custody and that the white powder tested positive for the presence of heroin.

In connection with his motion to quash arrest and suppress evidence, defendant argued that the officer did not have probable cause to ask him to exit the vehicle, to step to the rear of the car, or to interrogate him. The State maintained that moving defendant to the rear of the vehicle was minimally intrusive and that no interrogation took place. Rather, defendant engaged the officer in conversation.

The trial court denied defendant’s motion. In its oral ruling, the trial court indicated that it found the officer’s testimony straightforward and credible. The trial court concluded that there was nothing impermissible in asking defendant his name and that moving defendant to the rear of the car had no legal significance. The trial court further noted that the officer had numerous reasons to have a conversation with defendant, including explaining to him the reason for the arrest and determining if defendant could be an alternative driver. According to the trial court, shining the flashlight in defendant’s face merely allowed the officer to assess defendant at 1 o’clock in the morning. Finally, the trial court found that the officer had probable cause to arrest defendant, based on his observation of the object in defendant’s mouth.

Following the trial court’s denial of defendant’s motion, the bench trial continued with defendant’s testimony. Defendant offered a different version of the vehicle stop. Defendant testified that when the driver of the vehicle, his brother, asked Officer Lukensmeyer why he stopped them, the officer replied, “Because I saw two black men in the car.” The officer made no mention of the Pontiac’s brake lights and never examined them. According to defendant, after arresting and cuffing his brother, Lukensmeyer placed his brother in the police vehicle. He then approached defendant and asked him to get out of the car. Once outside the vehicle, Lukensmeyer told defendant to turn around and then placed handcuffs on him, saying that it was for the officer’s own safety. As Lukensmeyer spoke to him, the officer shined a flashlight in defendant’s face. Defendant testified that he did not have anything in his mouth and that the officer never asked him to spit out anything. After placing defendant in the police car, Lukensmeyer removed a black case from the trunk and returned to the Pontiac. A short while later, Lukensmeyer returned to the police car and told defendant and his brother that he found drugs inside their car. Defendant denied having narcotics in his possession that day and denied telling Lukensmeyer that any drugs in the car belonged to him.

The trial court found defendant guilty of possession of a controlled substance and subsequently sentenced him to a four-year term of imprisonment. The appellate court reversed, concluding that the arrest of defendant violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV). 327 Ill. App. 3d at 983-84. The appellate court stated, in relevant part:

“[A] police officer has to have some lawful authority to ask a defendant for identification ***.

In this case, the officer did more than ask for identification. He ordered the defendant out of the car and to the rear of it because he was ‘curious.’ The defendant submitted. We believe the defendant was detained at that point without lawful authority. Curiosity is not a good reason to detain. Everything that flowed directly from that unlawful detention must be suppressed.” 327 Ill. App. 3d at 983.

For the reasons discussed below, we affirm the judgment of the appellate court.

ANALYSIS

I

Generally, a trial court’s ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. This deferential standard applies when the disposition of the suppression motion turns on factual determinations and credibility assessments. Where, however, no dispute exists as to the facts or witness credibility, the trial court’s ruling will be reviewed 
de novo
. 
People v. Anthony
, 198 Ill. 2d 194, 200-01 (2001); 
People v. Gonzalez
, 184 Ill. 2d 402, 411-12 (1998). In the present case, the trial court found Officer Lukensmeyer’s testimony credible. Such finding was not manifestly erroneous. Accordingly, we conduct 
de novo
 review under the officer’s version of events. See 
People v. Love
, 199 Ill. 2d 269, 274-75 (2002); 
Gonzalez
, 184 Ill. 2d at 412.

II

Before considering the merits of this appeal, we briefly review the principles relevant to deciding whether a vehicle stop comports with fourth amendment jurisprudence.

The temporary detention of individuals–passengers and drivers alike–during a vehicle stop constitutes a “seizure” of “persons” within the meaning of the fourth amendment. 
People v. Gonzalez
, 204 Ill. 2d 220, 225 (2003), citing 
Whren v. United States
, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996). Vehicle stops are, therefore, subject to the fourth amendment’s requirement of reasonableness. Because a traffic stop is more analogous to a 
Terry
 investigative stop (see 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest, the reasonableness of a traffic stop is analyzed under 
Terry
 principles. 
Gonzalez
, 204 Ill. 2d at 226. A 
Terry
 analysis involves a dual inquiry: “(1) ‘whether the officer’s action was justified at its inception,’ and (2) ‘whether it was reasonably related in scope to the circumstances which justified the interference in the first place.’ ” 
Gonzalez
, 204 Ill. 2d at 228, quoting 
Terry
, 392 U.S. at 19-20, 20 L. Ed 2d at 905, 88 S. Ct. at 1879.

In this case, no issue exists concerning the lawfulness of the initial stop of the vehicle–the first prong of the 
Terry
 analysis. Rather, this appeal concerns the lawfulness of the officer’s conduct following the initial stop, and thus concerns the second prong of the 
Terry
 analysis. Under the second prong we consider the 
length
 of the detention and the 
manner
 in which it was carried out. 
Gonzalez
, 204 Ill. 2d at 233. That is, “ ‘an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop,’ ” and “ ‘the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer’s suspicion in a short period of time.’ ” 
Gonzalez
, 204 Ill. 2d at 233, quoting 
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325-26 (1983) (plurality op.). With these principles in mind, we consider the State’s arguments on appeal.

A

The State first maintains that Officer Lukensmeyer could lawfully direct defendant to exit the vehicle. See 
Maryland v. Wilson
, 519 U.S. 408, 415, 137 L. Ed. 2d 41, 48, 117 S. Ct. 882, 886 (1997) (holding that, consistent with the fourth amendment, “an officer making a traffic stop may order passengers to get out of the car pending completion of the stop”); 
Gonzalez
, 184 Ill. 2d at 420 (following 
Wilson
 and holding that the officer’s command to the passenger of a lawfully stopped vehicle to return to the car was not an unreasonable seizure); 
People v. Sorenson
, 196 Ill. 2d 425, 433 (2001) (“it is well established that following a lawful traffic stop, police may, as a matter of course, order the driver and any passengers out of the vehicle pending completion of the stop without violating the protections of the fourth amendment”).

Defendant concedes that Officer Lukensmeyer could lawfully direct defendant to exit the vehicle so that the officer could take charge of the car and have it towed. In light of defendant’s concession, there is no reason to consider this point further.

B

The State next argues that the officer’s questioning of defendant, after he exited the vehicle, did not implicate fourth amendment protections. In analyzing this issue, we consider our recent decision in 
People v. Gonzalez
, 204 Ill. 2d 220 (2003).

In 
Gonzalez
, police stopped a vehicle for not having a front license plate. While one of the officers processed the driver, the other officer approached the passenger, who was not suspected of any criminal conduct, and requested identification. The passenger complied, and the ensuing encounter between the officer and the passenger resulted in a search of the passenger’s person, revealing a packet of cocaine. The passenger was arrested and charged. The passenger later challenged the officer’s request for identification, arguing that it was an unreasonable seizure under our federal and state constitutions. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.

In resolving the passenger’s constitutional challenge, we formulated the following general framework for analyzing whether police questioning during the course of a traffic stop satisfies the second prong of the 
Terry
 analysis:

“[W]e must consider, as an initial matter, whether the question is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.” 
Gonzalez
, 204 Ill. 2d at 235.

We concluded in 
Gonzalez
 that no fourth amendment violation occurred. Although the request for identification was not related to the purpose of the stop or supported by a reasonable, articulable suspicion of criminal conduct, the request did not prolong the passenger’s detention because it was made during the course of the stop while the driver was being processed. Further, the facially innocuous question, which the passenger could decline to answer, did not change the fundamental nature of the stop. 
Gonzalez
, 204 Ill. 2d at 236.

Applying the 
Gonzalez
 framework to the facts in the present case, we reach a different result. We note first that the questions the officer put to defendant (“What’s your name? Where you [
sic
] coming from?”) were not related to the purpose of the stop–operating a vehicle without brake lights. The officer’s questions also were not supported by a reasonable articulable suspicion of criminal conduct. Prior to being approached by Officer Lukensmeyer, defendant was simply a passive occupant of the car. Although the trial court indicated that the officer had “numerous” reasons to have a conversation with defendant, including explaining to him the reason for the arrest and determining if defendant could be an alternative driver, the questions the officer actually posed were not objectively related to either of these reasons.

Because the questioning of defendant was not related to the stop and not supported by a reasonable, articulable suspicion of criminal conduct, we must consider whether the questioning prolonged defendant’s detention or changed the fundamental nature of the stop. See 
Gonzalez
, 204 Ill. 2d at 236. Significantly, in 
Gonzalez
, the officer’s request for identification took place while the driver was being processed and the purpose of the stop had yet to be completed. Thus, the officer’s request did not prolong the passenger’s detention. In contrast, the questioning of defendant in the present case occurred 
after
 the purpose of the stop was concluded. That is, the questioning occurred after the driver had been placed under arrest, the officer had already decided to have the car towed, and defendant was directed to exit the vehicle for that purpose. Thus, unlike the request put to the passenger in 
Gonzalez
, the officer’s questioning of defendant in the instant case fails to satisfy the second prong of the 
Terry
 analysis because it prolonged defendant’s detention beyond the completion of the purpose of the stop.

The State maintains, however, that the initial detention of defendant, incidental to the stop of the vehicle, ended when defendant exited the car. What followed, according to the State, was a consensual conversation between defendant and the officer. We disagree. In reaching this conclusion, we are guided by our decision in 
People v.
 
Brownlee
, 186 Ill. 2d 501 (1999).

In 
Brownlee
, police stopped a vehicle for a traffic violation. Officers Guerrero and Maxey obtained the identities of the driver and the three passengers. The officers checked for outstanding warrants, found none, and decided not to issue any traffic citations. The officers decided, however, to ask the driver for permission to search the car. After the driver consented to the search, all of the occupants were ordered out of the car. The search revealed marijuana and all four individuals were arrested. One of the passengers moved to quash arrest and suppress evidence, arguing that the continued detention and search of the car were unrelated to the original basis for the vehicle stop and any consent was the product of the unlawful detention. The circuit court granted the motion; the appellate court reversed. 
People v. Brownlee
, 293 Ill. App. 3d 315 (1997).

On appeal to this court, the State maintained that the conclusion of the traffic stop was merely followed by a consensual conversation between the officer and the driver that resulted in a voluntary consent to search the vehicle. In other words, the driver was not seized when he gave consent to search the vehicle. 
Brownlee
, 186 Ill. 2d at 516. We rejected this argument.

We proceeded from the well-established proposition that a person is seized “ ‘when, by means of physical force or a show of authority,’ that person’s ‘freedom of movement is restrained.’ ” 
Brownlee
, 186 Ill. 2d at 517, quoting 
United Stated v. Mendenhall
, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In determining whether the driver was seized at the point that he gave consent to search the vehicle, we considered whether “ ‘if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.’ ” 
Brownlee
, 186 Ill. 2d at 517, quoting 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

The facts in 
Brownlee
, as established by the officers’ testimony, revealed that, after deciding not to issue any citations, the officers returned to the vehicle. With Officer Guerrero standing on the driver’s side of the car, and Officer Maxey standing on the passenger side, Guerrero returned to the driver his license and insurance card and explained that no citations would be issued. Although the traffic stop at that point had concluded, the officers continued to flank the vehicle and paused for a couple of minutes, saying nothing. Following this pause, Guerrero asked the driver for permission to search the vehicle. We determined that, “[g]iven these circumstances, we can find no fault with the circuit court’s conclusion that the officers’ actions constituted a show of authority such that a reasonable person would conclude that he or she was not free to leave.” 
Brownlee
, 186 Ill. 2d at 520. We explained that “[a] reasonable person in this driver’s situation would likely conclude that, if he or she drove away, then the two officers would soon be in hot pursuit.” 
Brownlee
, 186 Ill. 2d at 520. We noted that the State made no attempt to show that the officers’ continued detention of the vehicle was in any way reasonable or objectively justified, or that the officers’ detention was sufficiently limited to satisfy the conditions of a 
Terry
 investigative seizure. 
Brownlee
, 186 Ill. 2d at 521. Accordingly, the illegal detention tainted the subsequent consent to search. 
Brownlee
, 186 Ill. 2d at 521.

In the present case, Officer Lukensmeyer’s testimony indicates that the purpose of the traffic stop concluded when the officer decided to have the vehicle towed and directed defendant to exit the car. The officer’s directions to defendant, however, continued. The officer directed defendant to move to the rear of the vehicle, where the driver–who was already under arrest and handcuffed–was standing. Then, positioning himself just a foot from defendant and shining his flashlight in defendant’s face, the officer asked him, “What’s your name? Where you [
sic
] coming from?” Given these circumstances, we conclude that the officer’s actions constituted a show of authority such that a reasonable person would conclude that he or she was not free to leave.

The State draws our attention to the fact that prior to defendant’s arrest, the officer did not draw his gun, place defendant in handcuffs, physically touch defendant, or indicate in any way that defendant was suspected of criminal conduct. Although true, these facts are not dispositive of whether the conversation was consensual. The officer’s show of authority, as in 
Brownlee
, manifested itself in other ways.

The State also points to the fact that defendant not only responded to one of the officer’s questions, but asked the officer his own question–why the driver was being arrested. The State argues that a “reasonable person, if they felt ‘seized’ *** would not further engage that officer in conversation which is not even related to his own arrest.” We do not find defendant’s concern about the arrest of the driver–defendant’s brother–indicative of whether a reasonable person would feel free to leave. Accordingly, we reject the State’s argument that the questioning of defendant was the product of a consensual encounter.

CONCLUSION

For the reasons discussed above, we conclude that defendant’s detention, following the conclusion of the purpose of the traffic stop, was unreasonable within the meaning of the fourth amendment, and tainted the resulting discovery of the heroin. We, therefore, affirm the judgment of the appellate court reversing the circuit court’s order denying defendant’s motion to quash arrest and suppress evidence. Under the circumstances, we do not consider the State’s argument that the arrest of defendant was supported by probable cause.

Affirmed.

JUSTICE GARMAN, concurring in part and dissenting in part:

I agree with the majority that the initial seizure of defendant, incidental to the permissible stop of a vehicle in which he was a passenger, was lawful. In addition, despite my joining the special concurrence in 
People v. Gonzalez
, 204 Ill. 2d 220 (2003), I agree that this case must be resolved by application of the rule adopted by the 
Gonzalez
 majority, which is now 
stare decisis
. However, unlike the majority, I conclude that the questions asked by the officer were permissible.

When engaged in a lawful traffic stop, an officer may direct a passenger to remain in or to exit the vehicle. See 
Maryland v. Wilson
, 519 U.S. 408, 415, 137 L. Ed. 2d 41, 48, 117 S. Ct. 882, 886 (1997); 
People v. Sorenson
, 196 Ill. 2d 425, 433 (2001); 
People v. Gonzalez
, 184 Ill. 2d 402, 420 (1998). The officer may also question the passenger during the seizure if the questions are either related to the initial justification for the stop or based on reasonable articulable suspicion of the passenger. 
Gonzalez
, 204 Ill. 2d at 235. If the questions are not justified on either of these bases, questioning is permissible only if it does not prolong the detention of the passenger or change “the fundamental nature of the stop.” 
Gonzalez
, 204 Ill. 2d at 235. Facially innocuous questions that the passenger could decline to answer do not change the stop’s fundamental nature. 
Gonzalez
, 204 Ill. 2d at 236.

In the present case, the officer asked the passenger’s name and where he and the driver were coming from. Although these questions might have been innocuous in nature (slip op. at 13 (Thomas, J., dissenting)), they were asked while the officer was asserting his authority by shining the beam of his flashlight in the defendant’s face. Because the stop occurred in the early morning hours and because the officer was alone, I cannot say that it was improper for him to make a show of authority by using his flashlight in this manner. However, because of this display of authority, defendant’s answers to the questions cannot be deemed voluntary.

The majority correctly observes that the officer did not ask defendant questions directly related to the purpose of the stop, such as if he had a valid driver’s license and was willing and able to drive the car. Further, the officer had no reasonable articulable suspicion of the defendant. Slip op. at 8.

I part company from the majority at this point in the analysis. The majority concludes that the questioning was improper because it occurred “
after
 the purpose of the stop was concluded.” (Emphasis in original.) Slip op. at 8. In effect, the majority blurs the distinction between the two prongs of the inquiry adopted in 
Gonzalez
 when it states that the officer “prolonged defendant’s detention” (the duration factor) after “the purpose of the stop” (the scope factor) was completed. Slip op. at 8.

There is no suggestion in the record that the two simple questions (“What’s your name? Where [are] you coming from?”), asked shortly after directing defendant to exit the car and stand near the driver, unnecessarily prolonged the detention of defendant. This situation is, therefore, entirely distinguishable from the impermissibly prolonged detention at issue in 
People v. Brownlee
, 186 Ill. 2d 501, 519-20 (1999), in which the officers, after determining that no traffic citation would be issued, nevertheless kept the occupants of the car from departing until they agreed to permit the car to be searched.

Thus, the determinative issue is whether these two simple questions altered the fundamental nature of the stop. The special concurrence in 
Gonzalez
 pointed out that the majority had not explained “what type of questioning would change the fundamental nature of the stop.” 
Gonzalez
, 204 Ill. 2d at 242 (Thomas, J., specially concurring, joined by Garman, J.). The present case requires us to consider this question.

Almost a year before this court decided 
Gonzalez
 and adopted the two-pronged duration-and-scope inquiry, the appellate court considered the question of the permissible scope of questioning during a traffic stop in 
People v. White
, 331 Ill. App. 3d 22 (2002). The defendant was the driver of a car that was validly stopped by police, who then inquired about items they saw in the backseat of the car, even going so far as to ask to see sales receipts. The receipts produced by the defendant contained a different name from his and led to the discovery that the items had been obtained illegally. The defendant was charged with forgery and theft by deception. 
White
, 331 Ill. App. 3d at 24. The defendant argued that the officer violated his fourth amendment rights by questioning him about matters unrelated to the purpose of the traffic stop. 
White
, 331 Ill. App. 3d at 25. The State argued that an officer is not prohibited from making inquiries unrelated to the purpose of the stop, so long as the stop itself and the length of the detention were otherwise lawful. 
White
, 331 Ill. App. 3d at 24.

The appellate court relied on many of the same cases that were cited by the 
Gonzalez
 majority when it concluded:

“While a police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning the purpose of the stop, the scope of the activities and questioning by the police during an investigatory detention must be reasonably related to the circumstances that initially justified the stop. [Citation.] An officer may expand the scope of his detention beyond that which is reasonably related to the circumstances only when the officer has a reasonable and articulable suspicion that other criminal activity may be afoot or where matters that arise during the course of the stop cause the officer reasonable suspicion. [Citation.] Questioning wholly unrelated to the purposes of the stop, which is
 reasonably calculated to elicit incriminating responses
, is impermissible unless supported by independent, reasonable, and articulable suspicion.” (Emphasis added.) 
White
, 331 Ill. App. 3d at 34.

The 
White
 court concluded that “the officer’s questions regarding the ownership of the items in the car were intrusive and calculated to elicit possibly incriminating responses.” 
White
, 331 Ill. App. 3d at 34-35. 
The appellate court affirmed the trial court’s suppression order. 
White
, 331 Ill. App. 3d at 35. 

In my opinion, 
White
 provides a useful framework for application of the scope prong of the 
Gonzalez
 inquiry. If the questions posed by the officer are unrelated to the purpose of the stop, then they are improper if they are reasonably calculated to elicit an incriminating response. Thus, if the basis of the stop is a broken headlight, a question about what is in a duffle bag in the backseat would be improper in the absence of independent, reasonable, and articulable suspicion.

Not all questions fall into these two categories, however. A question may be unrelated to the purpose of the stop, but not likely to elicit an incriminating response. The questions posed by the officer in the present case (“What’s your name? Where [are] you coming from?”) are of this variety. The answers to these questions had nothing to do with the initial purpose of the stop, which was to investigate a suspected inoperative brake light, yet they were not likely to elicit incriminating information. Indeed, it was not defendant’s answers that incriminated him. It was the fact that, as he spoke, he revealed the packet of drugs that he was trying to conceal in his mouth.

In sum, I conclude that defendant was lawfully seized when the car in which he was riding was stopped for investigation of a possible traffic violation. Even though the driver was placed under arrest and the officer intended to impound the car, the lawful seizure of defendant was still in effect when the officer told him where to stand and asked him two questions while shining a flashlight in his face. Therefore, the questions did not impermissibly prolong the duration of his detention. The questions themselves were permissible because they did not change the fundamental nature of the stop by seeking to elicit incriminating information unrelated to the purpose of the stop. I would reverse the appellate court and affirm the trial court’s denial of defendant’s motion to quash arrest and suppress evidence.

JUSTICE THOMAS, dissenting:

I disagree with the majority’s conclusion that the officer’s questioning of defendant, after defendant exited the vehicle, violated defendant’s fourth amendment rights. In reaching its conclusion, the majority contradicts a wealth of well-settled fourth amendment law and unduly extends 
People v. Gonzalez
, 204 Ill. 2d 220 (2003), and 
People v. Brownlee
, 186 Ill. 2d 501 (1999), to apply to the present case, which is factually inapposite. Accordingly, I respectfully dissent.

The United States Supreme Court has repeatedly held that “mere police questioning does not constitute a seizure” for purposes of determining whether a fourth amendment violation has occurred. 
Florida v. Bostick
, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991). Thus, “[p]olice may approach persons and ask questions or seek their permission to search, provided that the officers do not imply that answers or consent are obligatory.” 
United States v. Childs
, 277 F.3d 947, 950 (7th Cir. 2002), citing 
Florida v. Rodriguez
, 469 U.S. 1, 5-6, 83 L. Ed. 2d 165, 170-71, 105 S. Ct. 308, 311 (1984); 
Immigration & Naturalization Service v. Delgado
, 466 U.S. 210, 216, 80 L. Ed. 2d 247, 255, 104 S. Ct. 1758, 1762 (1984); 
Florida v. Royer
, 460 U.S. 491, 501, 75 L. Ed. 2d 229, 238-39, 103 S. Ct. 1319, 1326 (1983) (plurality op.); 
United States v. Mendenhall
, 446 U.S. 544, 552-58, 64 L. Ed. 2d 497, 508-12, 100 S. Ct. 1870, 1876-79 (1980). Instead, a seizure occurs “[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” 
Terry v. Ohio
, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16, 88 S. Ct. 1868, 1879 n.16 (1968).

The usual test for determining whether a fourth amendment violation has occurred is whether “ ‘if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.’ ” 
Michigan v. Chesternut
, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 572, 108 S. Ct. 1975, 1979 (1988), quoting 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. This test applies where police encounter a person walking down a street or through an airport (
Bostick
, 501 U.S. at 435, 115 L. Ed. 2d at 399, 111 S. Ct. at 2387), and obviously applies to a driver at a traffic stop, who is not free to leave until police have finished processing the stop (
Gonzalez
, 204 Ill. 2d at 238 (Thomas, J., specially concurring)). Examples of circumstances that might indicate a seizure under the “free to leave” test include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled. 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

A different test applies, however, when the person’s freedom of movement is restricted by circumstances independent of police conduct, such as when a person is on a bus or at work, and therefore has no desire to leave. 
Bostick
, 501 U.S. at 435-36, 115 L. Ed. 2d at 399, 111 S. Ct. at 2387 (when a person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he is free to leave is not an accurate measure of the coercive effect of the encounter); 
Delgado
, 466 U.S. at 218, 80 L. Ed. 2d at 256, 104 S. Ct. at 1763 (when people are at work their freedom of movement has been meaningfully restricted by their voluntary obligations to their employers). In such situations, the appropriate test is not whether the person was “free to leave.” Rather, the relevant question is whether a reasonable person would feel free to decline the officers’ requests or otherwise terminate the encounter. 
Bostick
, 501 U.S. at 436, 115 L. Ed. 2d at 400, 111 S. Ct. at 2387.

I believe that the approach applied in 
Bostick
 is the correct one to be applied here. Defendant’s freedom to leave was hampered not because of police conduct investigating him for a violation of the vehicle code, but because he was a passenger in a car driven by a defendant who was lawfully arrested. I would further find, however, that there was no fourth amendment violation under either analysis.

Turning to the 
Bostick
 test first, I note that defendant was a passenger in a stopped car and not a suspect. He then exited the vehicle he was sitting in when it became clear that the driver and owner of the vehicle had been arrested and that the vehicle was to be towed and impounded. At that point, defendant was a pedestrian, but without any immediate desire to leave because he was being left stranded along the roadway late at night. At this point, the officer posed the two innocuous questions at issue: “What’s your name? Where you [
sic
] coming from?” Defendant’s response to these questions shows, without a doubt, that he believed he was free to decline the officer’s request. Defendant answered the first question, but ignored the second. Instead, defendant asked a question of his own, engaging the officer in conversation about why the driver was being arrested.

Instead of applying a 
Bostick
 analysis, the majority 
applies the “general framework” of 
Gonzalez
, which adopted the test set forth in a partial concurrence and partial dissent to a Tenth Circuit opinion that involved questioning of a 
driver
. See 
United States v. Holt
, 264 F.3d 1215, 1239-40 (10th Cir. 2001) (Murphy, J., concurring in part and dissenting in part). This test looks first to whether the question was related to the initial purpose for the stop or whether there was a reasonable suspicion of criminal activity. If the questioning is not related to the initial purpose of the stop and there is no suspicion or criminal activity, the next inquiry is whether the question prolonged the duration of the stop or changed the fundamental nature of the stop.

In 
Gonzalez
, the defendant was a passenger in a vehicle stopped by two police officers for not having a front licence plate. One of the officers asked the defendant for his identification during the course of the stop. The officer ran a computer check on the traffic ticket that the defendant handed to the officer, and the ensuing encounter led to a search of the defendant’s person, revealing a packet of cocaine. This court found that the detention did not violate fourth amendment principles. 
Gonzalez
, 204 Ill. 2d at 236.

In my special concurrence in 
Gonzalez
, I noted that 
Bostick
 provided the proper analysis for determining whether the passenger had been seized for fourth amendment purposes when the officer asked for his identification. This was because the passenger was not suspected of any wrongdoing, and his freedom of movement was not restricted given that police were not investigating him for violating the vehicle code, but rather he was a passenger in a car that had not yet reached its destination. I pointed out that the majority had erroneously assumed that the initial “seizure” by police thereafter subjected both driver and passenger to a fourth amendment seizure for the entire duration of the stop. I further noted that the majority had erroneously held that the questioning of the passenger must be viewed as part of the investigation of the driver. I then noted that, in the end, it appeared that the majority actually applied 
Bostick
 rather than the 
Holt
 partial dissent and partial concurrence to reach its result.

In the present case, the majority goes much further down the wrong road than it did in 
Gonzalez
. Even applying the 
Gonzalez
 framework lifted from the partial concurrence and partial dissent of 
Holt
, it is clear that the questioning of defendant did not violate the fourth amendment. The majority begins by finding that the facially innocuous questions in the present case were not related to the purpose of the stop. The majority is mistaken on this point for several reasons. Initially, I note that the majority’s conclusion appears to be the result of its faulty characterization of the purpose of the stop, 
i.e.
, to investigate “operating a vehicle without brake lights.” See slip op. at 7. In limiting the purpose of the stop in this way, the majority ignores that, unlike in 
Gonzalez
, the purpose of the stop in the present case changed once the driver failed to produce a license and was arrested. At that point, the purpose of the stop broadened to encompass the encounter with the stranded passenger.

The trial court properly concluded that the officer had numerous reasons to have a conversation with defendant, “including explaining to him the reasons for the arrest [and] 
to determine *** who he is so that perhaps he can be an alternate driver.
” (Emphasis added.) See 
Mendenhall
, 446 U.S. at 554 n.6, 64 L. Ed. 2d at 509 n.6, 100 S. Ct. at 1877 n.6 (the subjective intentions of an officer are irrelevant to a fourth amendment analysis, except to the extent that they have been communicated to the defendant); see also 
Ohio v. Robinette
, 519 U.S. 33, 38, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 420-21 (1996) (“ ‘ “the fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action” ’ ”), quoting 
Whren v. United States
, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 98, 116 S. Ct. 1769, 1774 (1996), quoting 
Scott v. United States
, 436 U.S. 128, 138, 56 L. Ed. 2d 168, 178, 98 S. Ct. 1717, 1723 (1978).

Despite the trial court’s undeniably objective rationale for the questioning, the majority inexplicably concludes that the questions the officer posed were not related to any of the reasons offered by the trial court. I fail to understand the majority’s belief that the query “What’s your name?” is not related to the reason given for the query by the trial court, namely, to find out the identity of the passenger to decide if he could be an alternate driver. I would find that the officer’s questions about defendant’s identity and where he had come from were clearly related to the trial court’s stated reason of determining “who he is so that perhaps he can be an alternate driver.” Obviously, if someone is to drive a vehicle away from the scene where the owner has been arrested, the officer would be responsible for determining if that person is legally able to drive. The questions were also reasonably related to the purpose of the stop based on an objective concern any officer would have for a passenger who might be left stranded as a result of the driver’s arrest. Additionally, the innocuous questions here could easily be viewed as nothing more than a polite prelude, leading to an explanation for the arrest of the driver. For these reasons, I would find that the questions were related to the purpose of the stop. The stop was therefore proper under 
Gonzalez
.

Next, the majority simply concludes that because the questioning occurred after the purpose of the stop terminated, it must have prolonged defendant’s detention beyond the purpose of the stop. It is at this point that the majority’s analysis seriously falters. The majority’s summary conclusion begs the real issue in this case–whether the initial seizure at the time of the stop had dissipated into a nonseizure, involving a 
Bostick
-like encounter. Because the stop in this particular case ended 
vis-a-vis
 defendant by the time defendant stepped out of the vehicle with the driver under arrest, there is no need to continue with a 
Gonzalez
 analysis under the circumstances presented here. Instead, the proper test to be applied is 
Bostick
. Defendant was no longer a passenger subject to a traffic stop when he stepped out of the vehicle. That the officer, out of courtesy, may have wanted to explain the reason for the arrest or that he may have been concerned for the passenger as he attempted to arrange his way home does not mean that the encounter continued to be a nonconsensual seizure. Defendant was not asked to exit the vehicle to continue the “purpose” of the stop or, as a matter of course, out of concern for officer safety. 
Cf
. 
People v. Sorenson
, 196 Ill. 2d 425, 433 (2001) (as a matter of course, police may order a passenger out of a vehicle pending completion of a stop, and if police believe he is armed and dangerous, they may conduct a pat-down search of his person too). Rather, defendant was asked out of the car because he would no longer be traveling in it that night, as the driver had been arrested and the vehicle was to be towed and impounded.

Perhaps in recognition of the futility of applying the 
Holt
-
Gonzalez
 framework to the facts of the present case
, the majority ultimately attempts to dig itself out of its predicament by shoveling forth 
People v. Brownlee
, 186 Ill. 2d 501 (1999). However, 
Brownlee
 is completely distinguishable and should have no application here to support the majority’s position. Actually, 
Brownlee
 helps illustrate why defendant’s encounter with police, after he exited the vehicle, was consensual.

First, 
Brownlee
 decided whether a driver was seized, not a passenger. Unlike the present case, the driver in 
Brownlee
 produced a valid license, which was returned to him after it was checked. The officers decided not to issue a citation. Thus, the valid portion of the stop in 
Brownlee
 ended without arrest, and there was no reason to ask any of the occupants to step out of the vehicle. Nevertheless, two officers continued to flank the vehicle for a couple of minutes, before finally asking the driver for consent to search. In contrast, the driver in the present case was lawfully handcuffed and arrested, and the vehicle was impounded. The lone officer here then lawfully directed the passenger out of the vehicle for the purpose of taking control it. At that point, defendant was a pedestrian with no immediate desire to leave the scene and, therefore, a 
Bostick
 analysis should apply.

Second, 
Brownlee
 appropriately applied the “free to leave” test to the case before it, citing 
Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877, because there was no outside force, aside from the police conduct, confining the driver to the location once he was handed back his license. But even applying the 
Mendenhall
 free-to-leave test to the facts in the case at bar, I would conclude that there was no fourth amendment violation. 
Mendenhall
’s criteria for examining whether a seizure has occurred overwhelming supports the State’s position: defendant was approached by a single officer, not multiple officers flanking the vehicle as in 
Brownlee
; the officer did not display a weapon; he did not physically touch defendant; and he did not use language or tone of voice to show that compliance with his request might be compelled. Despite a complete absence of these indicators, the majority concludes that the officer’s use of a flashlight indicated a show of authority. However, I do not find the officer’s use of a flashlight late at night to be indicative of a show of authority in the absence of any of the other examples that are normally looked at to make this determination. Moreover, I am not aware of any case law holding that a show of authority results from the mere use of a flashlight by an officer late at night to see the person with whom he is speaking. Furthermore, I note that the trial court correctly concluded that directing defendant to exit toward the rear of the car had no legal significance. An officer may question a person without bringing about a seizure not only when the questioning does not interrupt a person’s movement, but also where the officer overtakes the pedestrian and asks him to halt or where the officer summons him to where the officer is located. 4 W. LaFave, Search & Seizure §9.3(a), at 98 (3d ed. 1996).

In conclusion, I disagree that defendant’s fourth amendment rights were violated. Applying the 
Bostick
 test, I would find that the encounter between the officer and defendant outside the vehicle was consensual and that a reasonable person in defendant’s position would have believed he was free to ignore the officer’s questions or otherwise terminate the encounter. The 
Gonzalez
 framework is unworkable as applied to this kind of fact pattern, and 
Brownlee
 is clearly distinguishable. Accordingly, I dissent from the majority opinion.