THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FELIPE D. PARRA, Defendant-Appellee.

Second District No. 2—03—0636

Opinion filed October 12, 2004.

Meg Gorecki, State's Attorney, of St. Charles (Mary Katherine Moran, Special State's Attorney, and Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Felipe D. Parra, was indicted for unlawful use of a weapon (720 ILCS 5/24—1(a)(4) (West 2002)) and aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(1) (West 2002)). He moved to quash his arrest and suppress the evidence. The trial court granted the motion. After the State's motion to reconsider was denied, the State filed a certificate of impairment and appealed. We affirm.

On August 2, 2002, Officer Jason Russell effected a traffic stop of a vehicle that had failed to activate its turn signal prior to making a turn at an intersection, failed to stop at a stop sign, and rapidly accelerated, causing its tires to screech. Defendant was the driver of the vehicle, and a passenger was also in the front seat of the car. Russell approached the vehicle, informed defendant of the reasons for the stop, and asked defendant for his driver's license and insurance information. Russell observed no furtive movements by defendant, and neither defendant nor the passenger was acting suspiciously. As defendant opened the glove box in order to obtain his insurance information, Russell observed several purple latex gloves in the glove box. Russell asked defendant his occupation, and defendant replied that he was a truck driver. Russell believed that the gloves were not job related. As defendant opened his wallet to retrieve his driver's license, Russell observed a firearm owner's identification (FOID) card in defendant's wallet.

After obtaining defendant's license and insurance information, Russell ran a computer check and discovered that defendant's license

was valid and that there were no outstanding warrants. The computer check did not indicate that defendant was involved in gang activity. Russell had no other information that defendant or the passenger was a gang member.

At about the same time, Russell called for backup because he suspected that a firearm was in the vehicle. His suspicion was based on his observation of the FOID card and the latex gloves, the fact that recently he had been advised that gang members were using latex gloves during the commission of crimes involving handguns, and the fact that the traffic stop had occurred in an area of high gang activity. Patrolman Todd Edwards arrived on the scene, and Russell told Edwards of his suspicions. Russell and Edwards approached defendant's vehicle, Russell asked defendant to step out of the car, and defendant complied. Russell asked defendant if he had any weapons or drugs on his person. Defendant replied that he did not. Russell asked to search defendant, defendant agreed, and Russell conducted a pat-down search. He found no contraband or weapons. Russell then asked defendant if he had any guns, drugs, or other illegal items in the vehicle. Defendant stated that he did not. Russell asked defendant for permission to search the vehicle for such items, and defendant agreed. Russell proceeded to search the car, eventually found a gun hidden under the dashboard, and arrested defendant.

Defendant moved to quash his arrest and suppress the evidence, arguing that he was unconstitutionally seized when Russell asked him for consent to search his person and his vehicle. The court agreed and granted the motion.

On appeal, the State argues that the questioning and search of defendant did not result in an unconstitutional seizure because the officers had a reasonable suspicion of criminal activity. In reviewing a ruling on a motion to suppress, we reverse the trial court's findings of fact only if they are against the manifest weight of the evidence. See *People v. Rush*, 319 Ill. App. 3d 34, 38 (2001). We review *de novo* the ultimate question of whether reasonable suspicion justified the stop and the officer's subsequent actions. See *Rush*, 319 Ill. App. 3d at 38-39. Here, the material facts are undisputed, and thus we address only the ultimate question.

■ The temporary detention of drivers or passengers during a vehicle stop constitutes a "seizure" of "persons" within the meaning of the fourth amendment to the United States Constitution. *People v. Gonzalez*, 204 Ill. 2d 220, 225 (2003). Therefore, vehicle stops are subject to the fourth amendment's requirement of reasonableness. *Gonzalez*, 204 Ill. 2d at 226. Because a traffic stop is more analogous to a *Terry* investigative stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed.

2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest, the reasonableness of a traffic stop is analyzed under *Terry* principles. *Gonzalez*, 204 Ill. 2d at 226.

Under *Terry*, a law enforcement officer may, within the limits of the fourth amendment, conduct a brief investigative stop of individuals, absent probable cause to arrest, provided that the officer has a reasonable, articulable suspicion of criminal activity. *Gonzalez*, 204 Ill. 2d at 227. If a detention exceeds what is permissible as a *Terry* stop, a subsequent consent to a search may be found to be tainted by the illegality. *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999). A *Terry* analysis involves a dual inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *Gonzalez*, 204 Ill. 2d at 228. Here, there is no issue as to the lawfulness of the initial stop of the vehicle. Rather, this appeal concerns only the lawfulness of the officer's conduct following the initial stop. Therefore, only the second prong of the *Terry* analysis is at issue.

In determining whether police questioning during the course of a traffic stop satisfies the second prong of the *Terry* analysis, we follow the framework set out in *Gonzalez*. Under that framework, we must first determine whether the questioning was related to the initial purpose of the stop. If so, no fourth amendment violation occurred. *Gonzalez*, 204 Ill. 2d at 235. If the questioning was not reasonably related to the purpose of the stop, we must next consider whether the law enforcement officer had a reasonable, articulable suspicion of criminal activity that justified the questioning. If the questioning was justified, no fourth amendment violation occurred. *Gonzalez*, 204 Ill. 2d at 235. Finally, in the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion of criminal conduct, we must consider whether, in light of all the circumstances and common sense, the questioning impermissibly prolonged the detention or changed the fundamental nature of the stop. *Gonzalez*, 204 Ill. 2d at 235.

■ Applying the *Gonzalez* framework, we hold that Russell's questioning fails to satisfy the second prong of the *Terry* analysis. First, Russell's question regarding contraband and request for consent to search defendant and his vehicle were unrelated to the initial purpose of the stop, the three traffic violations.

Because the questions were not related to the initial purpose of the stop, we next consider whether Russell had a reasonable, articulable suspicion of criminal conduct that justified the questioning. The State argues that the questioning was justified based on (1) Russell's observation of the latex gloves, (2) his observation of the FOID card,

and (3) the fact that the stop occurred in a "high crime area." We hold that these facts, viewed individually or taken together, did not provide Russell with a reasonable, articulable suspicion of criminal activity that justified his questioning of defendant.

First, Russell's observation of the latex gloves did not support a reasonable, articulable suspicion of criminal activity. Even though Russell had been advised that gang members were using latex gloves during the commission of handgun crimes, he had no information that defendant or the passenger was a gang member. Additionally, as defendant argues in his appellate brief, latex gloves have many legitimate uses, and there are numerous noncriminal reasons why an individual would keep latex gloves in his or her car.

Second, the fact that the stop occurred in a high-crime area is also insufficient to support reasonable suspicion. See *People v. Gilbert*, 347 Ill. App. 3d 1034, 1041 (2004); *People v. Ortiz*, 317 Ill. App. 3d 212, 224-25 (2000).

Finally, defendant's FOID card indicated only that he owned a firearm, and the mere ownership of a firearm is not illegal. The card did not indicate that defendant was illegally carrying a firearm in the vehicle. Thus, Russell's observation of the FOID card did not warrant a reasonable suspicion of criminal activity. We also note that, because an individual must possess a FOID card in order to acquire or possess a firearm (see 430 ILCS 65/2(a)(1) (West 2002)), allowing an officer to question a driver and search his or her car based on the observation of a FOID card would penalize the driver for complying with the law.

The State cites *People v. Ross*, 289 Ill. App. 3d 1013 (1997), as support for its argument that the FOID card provided Russell with reasonable suspicion of criminal activity. There, two officers stopped the defendant for a traffic violation, and the defendant exited the car and met the officers at the back of his vehicle. The officers asked for identification and the defendant produced a FOID card. The officers asked the defendant if there was a gun in the car, and the defendant responded that there was. The officers searched the car, located the gun, and arrested the defendant. On appeal from the denial of the defendant's motion to suppress, the reviewing court held that the questioning of the defendant was not a fourth amendment violation. It reasoned that based on safety concerns, it was reasonable for the officers "to be concerned about the whereabouts of that gun and to question [the defendant] regarding it." *Ross*, 289 Ill. App. 3d at 1018.

*Ross* does not help the State here. The *Ross* court did not hold that the FOID card gave the officers a reasonable, articulable suspicion of criminal conduct. Rather, it held that the officers' questioning and search for weapons were justified because of the officers' safety

concerns. *Ross*, 289 Ill. App. 3d at 1018. Such a search is permissible if an officer reasonably concludes that the driver poses a threat to his safety. See *People v. Morquecho*, 347 Ill. App. 3d 382, 386 (2004). Here, the State does not argue that Russell requested consent to search defendant and his car out of a concern for his safety. Nor did Russell testify that that was the reason for the search. Thus, the State cannot rely on *Ross* to justify the questioning and search of defendant.

Because Russell's questioning was not related to the purpose of the stop and was not supported by a reasonable, articulable suspicion of criminal conduct, we next consider whether the questioning prolonged defendant's detention or changed the fundamental nature of the stop. In *People v. Bunch*, 207 Ill. 2d 7, 17 (2003), the court held that questioning that occurred after the purpose of the stop had concluded impermissibly prolonged the detention of the defendant. Such is the case here. Russell stopped the vehicle because of three minor traffic violations. Once Russell determined that defendant's license was valid and that there were no outstanding warrants, all that remained was to issue defendant a warning or a ticket. Instead, Russell asked defendant whether he had contraband and asked for consent to search his person and his vehicle. Because these questions occurred after the purpose of the stop was completed, the questions impermissibly prolonged defendant's detention. See *Bunch*, 207 Ill. 2d at 17.

Moreover, the questioning changed the fundamental nature of the stop. To issue defendant a warning or a ticket for the traffic violations, Russell needed only to obtain defendant's license and registration, run a computer check, and issue the warning or ticket. By asking whether defendant had contraband and asking to search him and his vehicle, Russell "converted a routine traffic stop into a fishing expedition." *People v. Hall*, 351 Ill. App. 3d 501, 505 (2004).

Accordingly, defendant's detention, following the conclusion of the purpose of the traffic stop, was unreasonable within the meaning of the fourth amendment and tainted the resulting discovery of the handgun. See *Bunch*, 207 Ill. 2d at 20.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.