THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DUPREE STAPLE, Defendant-Appellant.

Fourth District   No. 4—02—0272

Opinion filed January 15, 2004.

Daniel D. Yuhas and Keleigh L. Biggins, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

On February 1, 2002, the trial court found defendant, Dupree Staple, guilty of possession of more than 2.5 but less than 10 grams of cannabis (720 ILCS 550/4(b) (West 2000)) and sentenced defendant to 21 days in jail plus costs and fees. Defendant filed a posttrial motion, which the trial court denied. Defendant appeals, arguing that (1) the trial court erred in denying his motion to suppress, (2) he did not knowingly waive in open court his right to a jury trial, (3) he is entitled to a $15 credit against his fines, and (4) the trial court erred in ordering him to pay a $15 "anticrime" fine. We reverse.

## I. BACKGROUND

In August 2001, the State charged defendant by information with unlawful possession of cannabis (720 ILCS 550/4(b) (West 2000)), alleging he knowingly and unlawfully possessed more than 2.5 grams, but not more than 10 grams, of a substance containing cannabis. On November 26, 2001, defendant filed a motion to suppress evidence, alleging that at the time of the detention, he was not observed in the commission of a crime, nor did the police have probable cause to believe that he had committed a crime. Defendant also alleged that he was detained and searched without exigent circumstances, without a warrant, and without consent, and, therefore, such detention and search were illegal.

On November 29, 2001, the trial court held a hearing on defendant's motion. Because the parties are familiar with the evidence presented, we will summarize it only to the extent necessary for a complete understanding of our disposition. In August 2001, defendant's brother was driving his automobile. Defendant was the front-seat passenger, and another person was the backseat passenger. Officer Robert Benschneider stopped the vehicle after observing no visible license plates or registration. Benschneider asked everyone in the car for their identification, which they produced. Benschneider returned to his squad car to run a criminal check on their driver's licenses. Benschneider discovered that the driver had a suspended driver's license and had an outstanding warrant for his arrest. Benschneider radioed for another officer to assist with the stop. When the officer arrived, the driver was arrested, handcuffed, and placed in the squad car. Ben-

schneider then reapproached the car and told defendant that "his brother was under arrest. And we would be searching the car and everyone in it." Prior to searching defendant, Benschneider asked defendant if he had any weapons or contraband on his person. Defendant stated that he had a bottle of Crown Royal in his pocket. Benschneider removed the bottle from defendant's pant's pocket. Benschneider then conducted a pat down of defendant's clothing and a frisk of his crotch area where he found a "hard lump[-]like [*sic*] in the seat of his pants. *** It felt like a round object. I could feel plastic around it." Benschneider testified that the purpose of the pat down was to make sure that no one had any weapons in the car before the police searched the car.

Upon questioning by the trial court, Benschneider testified that his standard "speech is to tell everyone since someone was arrested[,] out of the car[,] we're going to search the car and everyone in it." The following colloquy transpired:

"Q. [THE COURT:] The question I've got is, tell me why you think you've got authority to search everybody else just because you know the driver's suspended and has a DOC warrant?

A. [BENSCHNEIDER:] Well, we have a search incident to arrest in the vehicle—

Q. Uh-huh?

A.—so we're going to secure the vehicle.

Q. How about the passengers, though? I know you can search [the] arrestee incident to the arrest and his vehicle. Do you think that you can also search any passengers?

A. Yes.

Q. Okay. Tell me why.

A. They're in the car when someone was taken out of the car under arrest."

The court made the following remarks:

"The officer discovered that the driver was suspended. Made the occupant of the car wait for seven or eight minutes while he went back to his squad car, during which time I'm sure he discovered the suspension of the driver and the, the department of corrections warrant, all of which is permissible seizure because the—I have no evidence that the driver hadn't committed a violation in the first place. Came back. Arrested the driver. *** The officer ordered the occupants out of the car, which he can do, told the occupants he was preparing to search them. *** [The officer] discovered the defendant had a bottle of booze on him *** before he commenced the frisk.

He then frisked the defendant, found, plucked out the bottle of Crown Royal from his pocket. I did not hear testimony whether it

was sealed or unsealed. Then ran his hands up and down defendant's inner thigh. And in the crotch area of the defendant found something that ultimately he learned was cannabis \*\*\*.

Under these circumstances an officer, I believe can order everyone out of the car. Can he frisk them? I would have to be shown some authority on that because maybe, [o]fficer, you've been to a seminar and have learned something that I don't know. Whether, whether you can do that, I don't know of authority that let's you do that. But you did ask him if he had anything and he admitted it. And I think after that, we have a different situation. That is you developed probable cause that he had committed an offense. And I believe at that time you had the right to conduct a light outer pat down.''

The court found that defendant's admission that he had Crown Royal on him gave the officer probable cause that defendant may have committed an offense of illegal transportation of alcohol, *i.e.*, if the seal were broken, which gave the officer the right to search defendant. The court denied defendant's motion to suppress.

In January 2002, defense counsel informed the court that defendant was requesting a stipulated bench trial. In February 2002, the cause was called for a stipulated bench trial. The trial court found defendant guilty of possessing more than 2.5 but less than 10 grams of cannabis (720 ILCS 550/4(b) (West 2000)). Pursuant to the parties' agreement, the court sentenced defendant to 21 days in jail and a $200 mandatory drug assessment. In its sentencing order, the court also imposed a $15 anticrime fee, but did not award defendant any sentence credit for time served. Defendant filed a posttrial motion, which the trial court denied.

This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred in denying his motion to suppress because his detention and subsequent search violated his fourth amendment rights. U.S. Const., amend. IV. Further, defendant contends that his possession of liquor did not provide probable cause for a search of weapons, and the police officer's subsequent rubbing manipulation of defendant's crotch area was not based on the reasonable belief that defendant was armed and dangerous, exceeded the scope of a weapons frisk, and was without probable cause. Therefore, the marijuana later discovered was tainted. The State concedes the error, and we agree.

### A. Standard of Review and Burden of Proof

■ The appeal of a ruling on a motion to suppress presents mixed

questions of fact and law. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). We will not disturb the trial court's factual determinations and assessment of witnesses' credibility unless they are manifestly erroneous. *People v. Anthony*, 198 Ill. 2d 194, 200-01, 761 N.E.2d 1188, 1191 (2001). We review *de novo* the ultimate decision of whether evidence should be suppressed. *People v. Crane*, 195 Ill. 2d 42, 51, 743 N.E.2d 555, 562 (2001).

■ On a motion to suppress, the defendant has the burden of proving the search and seizure were unlawful. 725 ILCS 5/114—12 (West 2000). "However, once the defendant makes a *prima facie* showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion." *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000).

### B. The Traffic Stop

■ The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, [and] seizures." Ill. Const. 1970, art. I, § 6. The Supreme Court of Illinois has interpreted the search and seizure clause of section 6 in a manner consistent with the United States Supreme Court's fourth amendment jurisprudence. *People v. Gonzalez*, 204 Ill. 2d 220, 224, 789 N.E.2d 260, 264 (2003).

■ When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. *People v. Sorenson*, 196 Ill. 2d 425, 432, 752 N.E.2d 1078, 1084 (2001). A temporary detention of an individual during a vehicle stop constitutes a seizure of his or her person within the meaning of the fourth amendment, even if the stop is brief and for a limited purpose. *Whren v. United States*, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred." *Whren*, 517 U.S. at 810, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772.

■ Recently, the Supreme Court of Illinois explained:
"Because a traffic stop is more analogous to a *Terry* investigative stop (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest, the reasonableness of a traffic stop

is analyzed under *Terry* principles. *Gonzalez*, 204 Ill. 2d at 226[, 789 N.E.2d at 265]. A *Terry* analysis involves a dual inquiry: '(1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." ' *Gonzalez*, 204 Ill. 2d at 228, [789 N.E.2d at 266,] quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879." *People v. Bunch*, 207 Ill. 2d 7, 13-14, 796 N.E.2d 1024, 1029 (2003).

■ In the present case, defendant does not challenge the propriety of the initial stop. Benschneider stopped the vehicle in which defendant was a passenger in the front seat upon observing no visible license plates or registration on the vehicle, a violation of section 3—413(b) of the Illinois Vehicle Code (625 ILCS 5/3—413(b) (West 2000)). See *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084 (stop of vehicle justified based on officer's observation of traffic violation). Therefore, Benschneider had probable cause to initiate a valid traffic stop.

## C. Defendant's Arrest

■ Following a lawful traffic stop, a police officer may, as a matter of course, order the driver and any passengers out of the vehicle pending the completion of the stop without violating the protections of the fourth amendment. *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084. The fact that an officer has a reason to stop a person, however, does not automatically justify the further intrusion of a search for weapons. *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084; *People v. Flowers*, 179 Ill. 2d 257, 263, 688 N.E.2d 626, 629 (1997). The officer may subject the person to a limited search for weapons, commonly referred to as a "frisk," only if the officer reasonably believes that the person is armed and dangerous. *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084; *Flowers*, 179 Ill. 2d at 263, 688 N.E.2d at 629.

■ In the present case, Benschneider testified that he told defendant "that his brother was under arrest. And we would be searching the car and everyone in it." We acknowledge that Benschneider could lawfully direct defendant to exit the vehicle so that Benschneider could take charge of the car and have it towed. At the point Benschneider arrested the driver, the traffic stop was over. Therefore, Benschneider's questions to and search of defendant after he exited the vehicle were improper unless Benschneider's question and search were related to the purpose of the stop or supported by a reasonable, articulable suspicion of criminal conduct. As a result, the existence of reasonable, articulable suspicion is evaluated at that point in time. *People v. Cox*, 202 Ill. 2d 462, 466-67, 782 N.E.2d 275, 278-79 (2002).

At that point, Benschneider knew defendant was a passenger in

the front seat of the vehicle. Benschneider never testified that he believed defendant was armed and dangerous. In fact, Benschneider testified that his standard speech is to "tell everyone since someone was arrested[,] out of the car[,] we're going to search the car and everyone in it." Upon questioning by the court, Benschneider testified he thinks he can search any passengers, as well as search the arrestee incident to the arrest. We find that Benschneider's questioning of defendant was not related to the stop and not supported by a reasonable, articulable suspicion of criminal conduct. We, therefore, must consider whether the questioning prolonged defendant's detention or changed the fundamental nature of the stop.

We find Benschneider's question to defendant clearly prolonged defendant's detention and did so beyond the completion of the purpose of the stop and changed the nature of the stop. Moreover, it cannot be argued that the detention was consensual. Benschneider did not ask for permission to search defendant. Rather, Benschneider told defendant that he was going to search the car and its occupants. In view of all of the circumstances here, defendant would not have believed that he was free to leave and not be subject to a search. Defendant was clearly seized when he was searched. *Bunch*, 207 Ill. 2d at 19, 796 N.E.2d at 1032.

The record does not demonstrate that defendant was suspected of any wrongdoing. Therefore, Benschneider's search of defendant was unlawful, and the trial court should have suppressed any evidence that was discovered as a result. Without that evidence, the trial court would have been unable to find defendant guilty of possession of cannabis. Because of our resolution of this issue, we need not consider defendant's remaining arguments on appeal.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order denying defendant's motion to suppress. Because the State cannot prevail without the suppressed evidence, we reverse his conviction and need not remand for further proceedings. See *People v. Avant*, 331 Ill. App. 3d 144, 154, 771 N.E.2d 420, 429 (2001); *People v. Fondia*, 317 Ill. App. 3d 966, 972-73, 740 N.E.2d 839, 844 (2000).

Reversed.

KNECHT, P.J., and APPLETON, J., concur.