# Illinois Official Reports

## Supreme Court

---

### *People v. Cummings*, 2016 IL 115769

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DERRICK A. CUMMINGS, Appellee. |
| Docket No. | 115769 |
| Filed | January 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District, heard in that court on appeal from the Circuit Court of Whiteside County, the Hon. John Hauptman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Trish Joyce, State's Attorney, of Morrison (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of Chicago, and Richard T. Leonard, of the Office of the State Appellate Prosecutor, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Sean Conley, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee. |
| Justices | CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1      On April 27, 2015, the Supreme Court of the United States vacated this court's judgment in *People v. Cummings*, 2014 IL 115769 (*Cummings I*), and remanded the cause for consideration in light of *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609 (2015). *Illinois v. Cummings*, ___ U.S. ___, 135 S. Ct. 1892 (2015). This court directed the State and defendant to file additional briefs regarding the impact of *Rodriguez* on this case.

¶ 2                                        BACKGROUND

¶ 3      The facts surrounding defendant's arrest are described in detail in our earlier opinion. *Cummings I*, 2014 IL 115769, ¶¶ 3-10. To summarize, defendant was driving a van registered to a woman named Pearlene Chattic in the city of Sterling. Sterling police officer Shane Bland pulled the van over because there was a warrant out for Chattic's arrest. Bland was unable to see the driver of the van until after he had pulled the vehicle over. Upon approaching, Bland saw defendant was a man and could not have been Chattic. Bland asked defendant for a driver's license and proof of insurance before explaining the reason for the stop. Defendant responded that he did not have a driver's license, and Bland cited him for driving while his license was suspended. 625 ILCS 5/6-303(d) (West 2010).

¶ 4      The circuit court of Whiteside County granted defendant's motion to suppress evidence, and the appellate court affirmed. *People v. Cummings*, 2013 IL App (3d) 120128. This court affirmed, with two justices dissenting, finding that Bland's license request impermissibly prolonged the seizure of defendant and the van. *Cummings I*, 2014 IL 115769. This court was in unanimous agreement that the initial stop was lawful because of Bland's reasonable suspicion "the driver was subject to seizure." *Id.* ¶ 20. This court also unanimously concluded Bland's reasonable suspicion that the driver was subject to arrest disappeared when he saw that the driver was a man and not Chattic, a woman. Likewise, defendant's production of a license was compelled and not consensual. The case thus presented a fairly narrow issue: whether asking for a driver's license in a lawfully initiated stop, without reasonable suspicion of a traffic violation or that the driver is subject to arrest, violates the fourth amendment by impermissibly prolonging the stop.

¶ 5      The majority concluded that, once Bland's reasonable suspicion evaporated, the request for identification was unrelated to the reason for the stop, and it impermissibly extended the stop. *Id.* ¶ 26. The dissent concluded the request for a driver's license was one of the "ordinary inquir[ies] incident to such a stop" permitted under *Illinois v. Caballes*, such that it did not impermissibly extend the stop. *Id.* ¶ 44 (Garman, C.J., dissenting, joined by Thomas, J.); see *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). The court entered judgment on March 20, 2014. On April 22, the court granted the State's motion to stay the mandate pending its filing of a petition for writ of *certiorari* with the United States Supreme Court, which the State filed on August 18, 2014.

¶ 6      While the State's petition was pending, the United States Supreme Court issued its opinion in *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609 (2015). In *Rodriguez*, the Court considered whether an eight-minute delay after a completed traffic stop, in order to conduct a drug-detecting dog sniff, violates the fourth amendment by impermissibly prolonging the stop.

The Court had previously upheld a dog sniff conducted contemporaneously with a traffic stop, so long as it did not prolong the stop "beyond the time reasonably required to complete [the] mission" of the traffic stop. *Caballes*, 543 U.S. at 407. It had also upheld unrelated questioning contemporaneous with a traffic stop, so long as it did not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). The *Rodriguez* Court also noted that some lower courts had given officers leeway to conduct a dog sniff at an unrelated traffic stop where the prolonging of the stop was "*de minimis.*" *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1615 (allowing two additional minutes for a dog sniff (citing *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 649 (8th Cir. 1999))). The Eighth Circuit Court of Appeals in *Rodriguez* had concluded the eight-minute delay was only a *de minimis* intrusion on the defendant's fourth amendment rights.

¶ 7     The Supreme Court rejected that rule allowing *de minimis* prolonging of a stop and held that the dog sniff, as "a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing,' " was not part of the officer's "mission" for the stop. *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1615 (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 41 (2000)). The Court defined the mission of the stop as "to address the traffic violation that warranted the stop" and to "attend to related safety concerns." *Id.* at ___, 135 S. Ct. at 1614. The safety concerns of the stop include "ensuring that vehicles on the road are operated safely and responsibly" (*id.* at ___, 135 S. Ct. at 1615) and maintaining officer safety, as "[t]raffic stops are especially fraught with danger to police officers." (Internal quotation marks omitted.) *Id.* at ___, 135 S. Ct. at 1616 (quoting *Johnson*, 555 U.S. at 330). The mission's safety concerns permit officers to make " 'ordinary inquiries incident to [the traffic] stop.' " *Id.* at ___, 135 S. Ct. at 1615 (quoting *Caballes*, 543 U.S. at 408). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at ___, 135 S. Ct. at 1615. Actions undertaken outside the mission would cause the stop to become unlawful if they " 'measurably extend the duration of the stop' " without "the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at ___, 135 S. Ct. at 1615 (quoting *Johnson*, 555 U.S. at 333). Thus, the United States Supreme Court drew a bright line against prolonging a stop with inquiries outside the mission of a traffic stop, unless an officer has reasonable suspicion for those inquiries. It also provided firmer guidance as to which inquiries fall within that mission.

¶ 8                                              ANALYSIS

¶ 9     Our question on remand is limited to the impact of *Rodriguez* on our decision in *Cummings I*. Defendant has not raised any arguments relating to any distinct protection under article I, section 6, of the Illinois Constitution of 1970 that would require a departure from general fourth amendment analysis. Ill. Const. 1970, art. I, § 6; see generally *People v. Caballes*, 221 Ill. 2d 282, 289-314 (2006) (describing this court's limited lockstep approach to synchronizing Illinois's search and seizure protections with the fourth amendment). The sole question is whether, in light of *Rodriguez*, Officer Bland's request for a driver's license after concluding defendant was not Pearlene Chattic impermissibly prolonged the stop, violating the fourth amendment.

¶ 10    The parties' arguments focus on the Supreme Court's descriptions of the ordinary inquiries of a traffic stop. The State's position is that asking for a driver's license is an ordinary inquiry

incident to every lawful vehicle stop and that *Rodriguez* thus abrogated our prior holding in *Cummings I*. Because the stop was otherwise reasonable in accordance with fourth amendment precedent, the driver's license request did not involve the sort of stop-prolonging unrelated criminal investigation prohibited by *Rodriguez*.

¶ 11 Defendant, focusing on the *Rodriguez* Court's statement that an officer's mission in a traffic stop "typically" includes checking the driver's license, argues the reason for the stop informs which inquiries would be ordinary for that type of stop. In defendant's view, because Bland pulled him over solely to seek Chattic's arrest, his driver's license would not be part of any ordinary inquiry. Defendant notes the *Rodriguez* Court's repeated references to enforcement of traffic laws. See, *e.g.*, *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1615 (noting that license checks, registration inspection, and checking for outstanding warrants "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly"); *id.* at ___, 135 S. Ct. at 1614 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). In defendant's view, this was a highly atypical traffic stop, having no origin in enforcing traffic laws. The State counters by arguing the only atypical element of this stop was its brevity, and by pointing out that, in practical terms, defendant argues no inquiries could be ordinary inquiries in this stop.

¶ 12 The State additionally notes the danger presented to officers in carrying out traffic stops, noting that the ordinary inquiries incident to a stop have a role in promoting the government's officer safety interest. Defendant argues the State has never demonstrated how the request for a license promotes those interests when the initial stop was not traffic-related.

¶ 13 We believe *Rodriguez* supports the State's interpretation. A traffic stop is analogous to a *Terry* stop, and its permissible duration is determined by the seizure's mission. *Id.* at ___, 135 S. Ct. at 1614. The seizure's mission consists of the purpose of the stop—in *Rodriguez*, traffic enforcement—and "related safety concerns." *Id.* at ___, 135 S. Ct. at 1614. Those related safety concerns include " 'ordinary inquiries incident to [the traffic] stop,' " and typically "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at ___, 135 S. Ct. at 1615 (quoting *Caballes*, 543 U.S. at 408). Those checks serve also to enforce the traffic code. *Id.* at ___, 135 S. Ct. at 1615.

¶ 14 Ordinary inquiries within the traffic stop's mission clearly do not offend the fourth amendment. Defendant would require a more limited set of ordinary inquiries where the stop did not have its genesis in traffic enforcement. That view, however, disregards the Court's discussion of the government's officer safety interest in *Rodriguez*. Contrasting the parallel criminal investigation of a dog sniff with the ordinary inquiries, the *Rodriguez* Court made clear that the ordinary inquiries serve officer safety as well as traffic enforcement:

> "Unlike a general interest in criminal enforcement, however, the government's officer safety interest stems from the mission of the stop itself. Traffic stops are 'especially fraught with danger to police officers,' *Johnson*, 555 U.S., at 330 (internal quotation marks omitted), so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at ___, 135 S. Ct. at 1616.

*Rodriguez* then cited with approval *United States v. Holt*, which recognized the officer safety justification for criminal record and outstanding warrant checks. *Id.* at ___, 135 S. Ct. at 1616

- 4 -

(citing *United States v. Holt*, 264 F.3d 1215, 1221-22 (10th Cir. 2001), *abrogated on other grounds by United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007) (recognizing that officers asking about weapons in a traffic stop were not limited to asking about loaded ones)). Notably, the *Holt* court approved criminal record and warrant checks "even though the purpose of the stop had nothing to do with such prior criminal history." *Holt*, 264 F.3d at 1221. The Tenth Circuit held that criminal record and warrant checks were justified because "an officer will be better appri[s]ed of whether the detained motorist might engage in violent activity during the stop." *Id.* at 1222.

¶ 15    Defendant's view of the ordinary inquiries, that they must relate to the initial purpose of the stop, would be in direct conflict with *Holt*'s officer safety justifications as favorably cited in *Rodriguez*. *Rodriguez* makes clear that unrelated inquiries impermissibly prolong the stop beyond its original mission when those inquiries are not precipitated by reasonable suspicion. *Rodriguez*, 575 U.S. at ___, 135 S. Ct. at 1614-15 (discussing *Caballes*, 543 U.S. at 407, *Johnson*, 555 U.S. at 333, and *Muehler v. Mena*, 544 U.S. 93, 101 (2005)). Ordinary inquiries incident to the stop do not prolong the stop beyond its original mission, because those inquiries are a part of that mission. *Id.* at ___, 135 S. Ct. at 1614-15. Indeed, defendant's view would collapse the two parts of the mission—the initial purpose of the stop and ordinary inquiries of the stop—into just the purpose of the stop. Nothing in *Rodriguez* suggests that license requests might be withdrawn from the list of ordinary inquiries for a nontraffic enforcement stop.

¶ 16    To the extent the ordinary inquiries are justified by the officer safety interest, defendant's view would also require a conclusion that it is the type of stop, and not the occurrence of the stop itself, that generates danger for officers. The relevant authorities instead reveal it is the stop itself that poses danger. *Id.* at ___, 135 S. Ct. at 1616 ("[t]raffic stops are 'especially fraught with danger to police officers' " (quoting *Johnson*, 555 U.S. at 330)); *id.* at ___, 135 S. Ct. at 1616, (noting "the government's officer safety interest stems from the mission of the stop itself").

¶ 17    Defendant's argument that the State must show how driver's license checks advance the interest in officer safety in this case, likewise, is foreclosed by *Rodriguez*'s favorable citation of *Holt*. Warrant checks and criminal history checks without reasonable suspicion were deemed permissible as "certain negligibly burdensome precautions in order to complete [the officer's] mission safely." *Id.* at ___, 135 S. Ct. at 1616. Thus, where a traffic stop is lawfully initiated, the interest in officer safety entitles the officer to know the identity of a driver with whom he is interacting. If the permissible inquiries include warrant and criminal history checks, as the *Rodriguez* Court found, they necessarily include less invasive driver's license requests. Accordingly, the State need not make any special showing that driver's license requests, as a less invasive precursor to already-permissible criminal history checks, achieve some additional safety goal.

¶ 18    Officer Bland's stop of defendant was lawfully initiated. Though his reasonable suspicion the driver was subject to arrest vanished upon seeing defendant, Bland could still make the ordinary inquiries incident to a stop. The interest in officer safety permits a driver's license request of a driver lawfully stopped. Such ordinary inquiries are part of the stop's mission and do not prolong the stop for fourth amendment purposes.

¶ 19                                    CONCLUSION

¶ 20        The United States Supreme Court's decision in *Rodriguez* makes clear that a driver's license request of a lawfully stopped driver is permissible irrespective of whether that request directly relates to the purpose for the stop. As a result, Officer Bland's request for defendant's license did not violate the fourth amendment by prolonging the stop.

¶ 21        The judgment of the appellate court, which affirmed the circuit court's judgment, is reversed. The circuit court judgment, suppressing evidence for prolonging the stop in violation of the fourth amendment, is reversed. The cause is remanded for further proceedings consistent with this opinion.

¶ 22        Reversed and remanded.