# Illinois Official Reports

## Appellate Court

---

### *People v. Veal*, 2017 IL App (1st) 150500

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISRAEL VEAL, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0500 |
| Filed | May 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-49; the Hon. Arthur F. Hill, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Imran Ahmad, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Ashlee Cuza, and Kelly Warnick-Brown, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a 2014 bench trial, defendant Israel Veal[1] was convicted of several counts arising out of his possession of a handgun, all of which merged into his armed habitual criminal conviction, for which he was sentenced to nine years' imprisonment. Veal's sole argument on appeal is that the trial court erroneously denied his pretrial motion to quash arrest and suppress evidence of the gun. Finding no error, we affirm.

¶ 2                                    BACKGROUND

¶ 3     Veal was charged with four counts of unlawful use of a weapon by a felon, two counts of aggravated unlawful use of a weapon, and one count of armed habitual criminal after an officer recovered a gun on Veal's seat during a traffic stop on December 5, 2013, in Chicago. Prior to trial, Veal moved to quash his arrest and suppress evidence of the gun.

¶ 4     At the suppression hearing and at trial, Officer Wojciech Kanski testified to the events of that night. Officer Kanski was assigned to the area north saturation team, which was dispatched to violent neighborhoods where there were high incidences of shootings and gang conflicts. Officer Kanski was on routine patrol with his partner, Officer Pelayo, in the area of 4258 West Washington Boulevard. Officer Pelayo pulled up next to a Honda Civic at a red light, at which time Officer Kanski observed that the rear two passengers of the car were not wearing seatbelts. After the light changed, Officer Pelayo executed a traffic stop of the Civic. The officers pulled to the side of the Civic after it had come to a stop, and Officer Kanski, who was next to the rear passenger on the driver's side, exited his vehicle and approached the Civic. As Officer Kanski was 5 to 10 feet away from the car, he observed the rear passenger closest to him, identified in court as Veal, making movements toward his waist, as though he was trying to cover something. Specifically, Officer Kanski testified that Veal moved his hands towards his waist on the right side of his body and pushed his waist down.

¶ 5     Upon observing Veal's movements, Officer Kanski ordered the car's occupants to raise their hands for reasons of officer safety. While three of the occupants immediately complied, Veal did not. Officer Kanski testified that Veal instead moved his hands up and down. Officer Kanski did not did not see anything in Veal's hands.

¶ 6     Officer Kanski initially ordered the driver out of the car, whereupon he patted him down, handcuffed him, and had him stand outside behind the Civic.[2] He then ordered Veal out of the car and opened the door for him. As Veal exited the car, Officer Kanski saw a handgun underneath where Veal had been sitting, and he immediately secured Veal and took possession of the weapon.

¶ 7     The trial court denied the motion to quash and suppress, finding that the seatbelt violation, coupled with Veal's furtive movements and his failure to comply with the officer's request to raise his hands, justified ordering Veal out of the car.

---

[1]The defendant's name is alternately spelled "Israel" and "Isreal" throughout the record and the briefs. We refer to him as "Israel" as that is the name used in the notice of appeal.

[2]Officer Kanski testified that the driver was ticketed for the passengers' seatbelt violations, but the record does not indicate if that was also the reason for the driver's arrest.

¶ 8    At trial, Officer Kanski was the sole State witness. His trial testimony echoed his testimony at the suppression hearing. At the close of the State's evidence, the court denied Veal's motion for a directed finding. Veal rested without putting on evidence, and the court found Veal guilty on all counts, which were merged into the most serious charge of armed habitual criminal. Following the denial of his posttrial motion, Veal was sentenced and timely appealed.

¶ 9                                                          ANALYSIS

¶ 10    The sole issue on appeal is the court's ruling on Veal's motion to quash and suppress. A ruling on a motion to suppress is subject to a mixed standard of review. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). The trial court's factual findings are entitled to deference, given that the trial court is in a superior position to weigh the credibility of witnesses, and we will uphold such findings unless they are contrary to the manifest weight of the evidence. *Id.* However, the ultimate legal question of suppression is subject to *de novo* review. *Id.*

¶ 11    Pursuant to the fourth amendment of the United States Constitution, people have the right to protection against unreasonable searches and seizures. U.S. Const., amend. IV; see also *People v. Jones*, 215 Ill. 2d 261, 268 (2005). Ordinarily, a search and seizure is reasonable under the fourth amendment if supported by a warrant showing probable cause. *Jones*, 215 Ill. 2d at 269 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). But there are several exceptions to the warrant requirement, including the circumstance where a police officer briefly stops a person for questioning when the officer reasonably believes that person has committed, or is about to commit, a crime—colloquially known as a *Terry* stop. *People v. Duran*, 2016 IL App (1st) 152678, ¶ 13 (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

¶ 12    A motor vehicle stop is akin to a *Terry* stop (*Knowles v. Iowa*, 525 U.S. 113, 117 (1998)), and as such, we analyze the reasonableness of such stops under *Terry* principles (*Jones*, 215 Ill. 2d at 270). A traffic stop is reasonable when the police have probable cause to believe that a traffic violation has occurred.[3] *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 20 (quoting *Whren v. United States*, 517 U.S. 806, 809-10 (1996)).

¶ 13    Here, Veal does not challenge the legality of the stop based on the fact that both Veal and his fellow rear-seat passenger were not wearing seatbelts. See 625 ILCS 5/12-603.1(a) (West 2014) (generally requiring rear-seat passengers to wear safety belts). And both parties agree that following a lawful traffic stop police may, as a matter of course, order the driver and any passengers out of the vehicle pending completion of the stop. See *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977); *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997); see also *People v. Sorenson*, 196 Ill. 2d 425, 433 (2001). However, the parties dispute whether Officer Kanski's command for Veal to exit the car occurred while the stop was in progress. Specifically, Veal contends that following the arrest of the driver, the stop had concluded and he was free to leave. Thus, according to Veal, the order to step out of the car constituted a new police-citizen encounter requiring separate justification under the fourth amendment. We disagree.

¶ 14    We have considered the question of when a traffic stop "ends" for purposes of determining the legality of a later search of the automobile or the defendant. As a general

_____

[3]A traffic stop may also be justified under the less exacting *Terry* standard of reasonable suspicion. *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 20 n.1 (collecting cases).

matter, we have held that the return of paperwork—*e.g.*, a driver's license, vehicle registration, or proof of insurance—signifies the conclusion of the stop, as it conveys to the driver that he is free to leave, and any ensuing search must be supported on grounds independent of the initial violation prompting the stop. See, *e.g.*, *People v. Cosby*, 231 Ill. 2d 262, 276 (2008); *People v. Kats*, 2012 IL App (3d) 100683, ¶ 20; *People v. Al Burei*, 404 Ill. App. 3d 558, 565 (2010); *People v. Miller*, 345 Ill. App. 3d 836, 842 (2004).

¶ 15    But Illinois courts have not squarely confronted the issue presented in this case, which is whether a traffic stop ends when, instead of returning papers to the driver, the officers arrest or restrain him. The closest case on point is *People v. Bunch*, 207 Ill. 2d 7, 14-15 (2003), where, following the arrest of the driver for failing to produce a valid driver's license, the police asked defendant, the front-seat passenger, to exit the car and then proceeded to question him. Although the defendant argued that the questioning violated his fourth amendment rights, he conceded that the officer could lawfully order him out of the vehicle. *Id.* As a result, the supreme court did not analyze the issue here. *Id.* at 15.

¶ 16    In considering this question, we find instructive the Supreme Court's decision in *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). There, three police officers pulled over a vehicle after a license plate check revealed that the vehicle's registration was suspended. *Id.* at 327. While one officer attended to the driver and asked him to exit the vehicle, another officer questioned the defendant, the rear-seat passenger, and eventually asked him to exit the car where she could question him regarding his gang affiliation outside of the presence of the front-seat passenger. *Id.* at 327-28. After the defendant exited, the officer patted him down and recovered a weapon; at issue was the lawfulness of the pat down. *Id.* at 328-29. The Court rejected the Arizona Court of Appeals' conclusion that the pat down was a separate encounter from the traffic stop and explained that a "traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will." *Id.* at 333 (citing *Brendlin v. California*, 551 U.S. 249, 257 (2007)). Accordingly, the stop does not "end" until the police no longer need to control the scene and inform the driver (or passengers) that they are free to leave. *Johnson*, 555 U.S. at 333. The Court concluded that nothing occurred to convey to the defendant that, prior to the pat-down, the stop had ended or that he was free to depart without police permission. *Id.* at 333-34.

¶ 17    We do not read *Johnson* to say that no traffic stop can be considered complete unless and until the police so inform the occupants of the vehicle. Rather, we must consider the circumstances of each case and determine whether, under those circumstances, a reasonable person would understand that they were free to leave and the police no longer needed to control the scene.

¶ 18    In this case, we do not believe the arrest of the driver would lead a reasonable person in Veal's position to believe that he was free to leave. Significantly, the stop was prompted by the fact that neither Veal nor the other rear-seat passenger was wearing a seatbelt, which is a petty offense subject to a fine. 625 ILCS 5/12-603.1(d) (West 2014). While Officer Kanski began the encounter by restraining the driver, that alone did not suggest that Veal would escape ticketing. In other words, Officer Kanski's action of handcuffing the driver did not convey to the passengers that they were then free to leave, particularly where two of those passengers had also committed traffic violations.

¶ 19    In sum, because we conclude that the stop was ongoing at the time Officer Kanski ordered Veal out of the car and because an officer may routinely order a passenger out of a

car during a lawful traffic stop (*Sorenson*, 196 Ill. 2d at 433), we hold that Veal's search and seizure did not run afoul of the fourth amendment. For this reason, we need not address the State's argument in the alternative that the officer's order to exit the car was independently supported by a reasonable suspicion that Veal had committed a crime based on his furtive movements.

¶ 20                                                    CONCLUSION
¶ 21            Accordingly, the judgment of the trial court is affirmed.

¶ 22            Affirmed.