2020 IL App (1st) 181616
No. 1-18-1616

SECOND DIVISION
December 22, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17CR0767501 |
| | ) | |
| ZIVAN SUTTON, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Stanley J. Sacks, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and
opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Zivan Sutton was convicted of the offense of being an armed habitual criminal and was sentenced to 7½ years' imprisonment. On appeal, defendant seeks reversal of his conviction and the sentence imposed thereon, arguing that he was subjected to an unlawful search and seizure and that the circuit court erred in denying his pretrial motion to suppress evidence. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3     On April 22, 2017, defendant was a passenger in a vehicle that was subject to a traffic stop. During the course of the stop, defendant was ordered out of the vehicle and searched. Marijuana and a handgun were recovered from his person. Defendant was subsequently arrested and charged with a number of drug and weapons offenses, including being an armed habitual criminal.

¶ 4     Following his arrest, defendant filed a motion to suppress evidence, arguing that he was subjected to an unlawful search and seizure during the course of the traffic stop because law enforcement officials "had no reasonable basis on which to suspect that [he] was violating the law of a jurisdiction and [his] conduct could not be reasonably be construed to give rise to reasonable suspicion or probable cause that he had committed, was committing or was about to commit a criminal offense."

¶ 5     The circuit court subsequently presided over a hearing on defendant's motion. At the hearing, Chicago Police Officer Rozillius Cain testified that on April 22, 2017, at approximately 11:18 a.m., he and his partner, Officer Caster, were on patrol in their unmarked police vehicle in the vicinity of 312 E. 50th Street, when they "observed a vehicle that was being operated without the passenger wearing a seatbelt." Officer Caster, who was driving their unmarked police vehicle, activated their emergency lights and curbed the vehicle. Both officers then approached the curbed vehicle. Officer Cain approached the passenger side of the vehicle, while his partner approached the driver's side of the vehicle. As his partner began a conversation with the driver of the vehicle, Officer Cain observed defendant sitting in the front passenger seat. When the driver was unable to produce a driver's license, Officer Caster ordered him out of the car, ascertained that his license was suspended, and placed him into custody. Officer Cain, in turn, addressed defendant, who remained sitting in the vehicle, and asked him if he had any weapons or "anything illegal" on his

person. Defendant initially responded "no." He then admitted that he had been in possession of cannabis, but that he had just smoked it. In response to additional questioning, defendant then admitted that he was in possession of a "bag of weed." As a result, Officer Cain requested defendant to exit the vehicle so that he could recover the marijuana and write defendant a citation.

¶ 6  Defendant complied, and Officer Cain asked him where the weed was located. After he recovered the bag of marijuana from defendant's pocket, he performed a protective pat down of defendant's person, during which he discovered a handgun in the waistband of defendant's pants. Upon discovering the weapon, Officer Cain placed defendant into custody. He admitted that, at the time he ordered defendant out of the vehicle and conducted a protective pat-down of defendant's person, he was not in possession of a search warrant or arrest warrant for defendant.

¶ 7  At the time of the traffic stop, Officer Cain was wearing a body camera that was in proper working order that recorded his encounter with defendant. The body camera footage was then played for the court.

¶ 8  The body camera footage of the traffic stop, which lasts approximately 14½ minutes, shows Officer Cain standing outside the passenger-side of the vehicle as his partner addresses the driver and asks him to exit the car so she run his name. Once Officer Cain's partner discovers that the driver had been operating the vehicle without a valid license, she handcuffs him, and the officers call for a transport vehicle. Approximately 5 minutes into the traffic stop, after a transport vehicle had been called but before it arrives, Officer Cain addresses defendant for the first time, asking defendant his name and whether he lives close to the area of the stop. Defendant identifies himself; however, he is not in possession of any identification. Officer Cain then asks him if he had "any weapons" or "anything illegal at all" on his person. Defendant initially denies possessing anything illegal, but then admits to being in possession of a bag of weed. Officer Cain informs defendant

that he appreciates his honesty, that he will write defendant a citation, and that, afterwards, defendant will be "free to go." At that point, approximately 6½ minutes into the traffic stop, defendant exits the vehicle, and Officer Cain retrieves the bag of marijuana from defendant's pants pocket. Officer Cain then begins a frisk of defendant and recovers a loaded handgun. He relays his discovery to his partner and handcuffs defendant. Officer Cain thanks defendant for not reaching for the gun during the encounter and inquires whether defendant is in possession of a Firearms Owner Identification (FOID) card or concealed carry license. Defendant admits he possesses neither. Defendant is searched once again while he is handcuffed, and additional narcotics are found on his person. Officer Cain then conducts a search of the vehicle and arranges for the car to be impounded before leaving the scene.

¶ 9    On cross-examination, Officer Cain testified that defendant was going to have to exit the vehicle, regardless of the answers to the questions that he provided. He explained that because his partner ascertained that the driver of the vehicle was not in possession of a valid license and was taken into custody, the vehicle was going to be impounded.

¶ 10    When asked to provide additional detail about his interaction with defendant, Officer Cain estimated that he stood approximately four feet away from defendant when he first observed him seated in the vehicle. At that time, defendant was "visibly nervous" and was "fidgeting with his hands a lot," moving "them in and out of view." Officer Cain testified that one of the first questions he asked defendant was whether he was in possession of any weapons. Defendant responded, "no." He then asked defendant if he was in possession of "anything illegal," and defendant again responded, "no." Finally, Officer Cain asked defendant if he "was going to find anything" on him. At that point, defendant admitted that he was in possession of marijuana, and Officer Cain ordered him to exit the vehicle. Defendant complied and, when asked where the marijuana was located,

directed Officer Cain to his front pants pocket. After he recovered the bag of marijuana from defendant's pocket, Officer Cain explained that he then conducted a protective pat down for weapons "[b]ecause in [his] experience usually when people have drugs on them there is a chance that there might be weapons" as well. Given that he was going to have to write defendant a citation for being in possession of marijuana, which required him to divert his attention away from defendant, Officer Cain was concerned for his own "personal safety." as well as for the safety of his partner. During the pat down that he performed due to the aforementioned safety concerns, Officer Cain recovered a loaded blue steel .380 handgun from the waistband of defendant's pants. Defendant was then handcuffed, and a custodial search revealed that he was in possession of additional narcotics. Defendant was asked whether he had been issued a concealed carry license or a FOID card and responded, "no" to both questions.

¶ 11    After calling Officer Cain to testify, the defense rested without calling any additional witnesses. The State elected not to present any witnesses, and the parties presented their arguments concerning the legal basis for the search at issue.[1] After hearing the arguments, the court took the matter under advisement. At a later court date, the court ultimately denied defendant's motion to suppress. The court reasoned that the questions posed to defendant during the lawful traffic stop were "pretty much innocuous" and that defendant's admission that he was in possession of marijuana justified Officer Cain's decision to issue defendant a citation and to conduct a brief pat down in order to protect his safety and the safety of his partner.

¶ 12    Thereafter, the cause subsequently proceeded to a bench trial. The parties stipulated to the testimony that Officer Cain provided at the earlier hearing on defendant's motion to suppress. The

---

[1]The defense expressly stated that the basis for the motion to suppress was limited to challenging the legal basis for the search. The defense did not contest the validity of the initial vehicle stop.

State then called upon Officer Cain to provide additional testimony. Officer Cain testified that after he recovered the loaded handgun from defendant's person, defendant was transported to the Second District Police Station for processing. At the station, he admonished defendant of his *Miranda* rights, and defendant elected to waive his rights. Officer Cain inquired why defendant was in possession of a firearm. Defendant explained that some people were "after him" and that he felt he needed a gun for protection. On cross-examination, Officer Cain admitted that his conversation with defendant was not recorded or memorialized in any way.

¶ 13    Thereafter, the State proceeded by way of stipulation. Pursuant to the first stipulation, the parties agreed that Christie Dostal, a forensic scientist with the Illinois State Police, would testify that she received seven items of suspect narcotics collected in the instant case; she performed testing commonly accepted in the field of forensic chemistry for ascertaining the presence of a controlled substance on one of those items; and she concluded that the item tested was less than a tenth of a gram of cocaine. The remaining six items were not tested but weighed 0.4 grams. The parties further stipulated that defendant had not been issued a valid FOID card or a concealed carry license as of April 22, 2017. Finally, the parties stipulated to defendant's criminal history. Specifically, the parties stipulated that defendant had a prior conviction for delivery of a controlled substance in case number 13CR-11009, as well as a prior conviction for unlawful use of a weapon by a felon in case number 08CR-21417.

¶ 14    After presenting the aforementioned evidence, the State rested its case. The defense moved for a directed finding. The court granted the defense's motion with respect to the narcotics charge, but denied its request for a directed finding as to the other counts. Defendant elected not to testify, and the defense rested without calling any witnesses. The parties then delivered closing arguments. After hearing the evidence and the arguments of the parties, the court found defendant guilty of

the remaining charges, all of which merged into the armed habitual criminal charge. The cause subsequently proceeded to a sentencing hearing, where the court ultimately sentenced defendant to 7½ years' imprisonment for being an armed habitual criminal. Defendant's posttrial and postsentencing motions were denied. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant argues that the circuit court erred in denying his pretrial motion to suppress evidence "where a police officer detained [him], a passenger in a car stopped, for a traffic violation, without specific articulable facts that raised a reasonable suspicion of criminal activity, thereby impermissibly prolonging the stop."

¶ 17    The State, in turn, responds that the circuit court "properly denied defendant's motion to suppress where police properly questioned and detained him pursuant to a lawful traffic stop."

¶ 18    As a general rule, a circuit court's ruling on a motion to suppress is subject to a bifurcated two-prong standard of review. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Johnson*, 237 Ill. 2d 81, 88 (2010). Pursuant to this standard, a reviewing court will afford great deference to the circuit court's factual findings and will disregard those findings only where they are against the manifest weight of the evidence. *Johnson*, 237 Ill. 2d at 88; *People v. Lopez*, 2013 IL App (1st) 111819, ¶ 17. The circuit court's ultimate legal finding as to whether suppression is warranted, however, is subject to *de novo* review. *People v. Colyar*, 2013 IL 111835, ¶ 24; *People v. Bartelt*, 241 Ill. 2d 217, 234 (2011). Accordingly, "[a] court of review 'remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.' " *People v. Gherna*, 203 Ill. 2d 165, 175-76 (2003) (quoting *People v. Crane*, 195 Ill. 2d 42, 51 (2001)). When conducting this analysis,

a reviewing court may consider the evidence presented at trial, in addition to the evidence presented during the prior suppression hearing. *People v. Almond*, 2015 IL 113817, ¶ 55.

¶ 19    The right to be free from unlawful searches and seizures is protected by both the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Bartelt*, 241 Ill. 2d. at 225-26. "The 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions." *People v. McDonough*, 239 Ill. 2d 260, 266-67 (2010) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)). This constitutional guarantee "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *People v. Thomas*, 198 Ill. 2d 103, 108 (2001).

¶ 20    As a general rule, a search and seizure is considered to be reasonable and in accord with the protections afforded by the fourth amendment if supported by a warrant establishing probable cause. *People v. Jones*, 215 Ill. 2d 261, 269 (2005) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). There are exceptions to the warrant requirement, however. For example, in accordance with the United States Supreme Court's seminal ruling in *Terry v. Ohio*, 392 U.S. 1 (1968), law enforcement officials may detain an individual, absent probable cause, if they have reasonable suspicion that he or she has committed or is about to commit a crime without running afoul of the fourth amendment. *Id.* at 38. The detention must be temporary and last no longer than to effectuate the purpose of the stop. *Jones*, 215 Ill. 2d at 270-71 (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Traffic stops, which involve the seizure of all occupants of the stopped vehicle (*People v. Harris*, 228 Ill. 2d 222, 231 (2008)), have been analogized to *Terry* stops and are subject to review under *Terry* principles (*People v. Cummings*, 2016 IL 115769, ¶ 13).

¶ 21 The seizure of a vehicle is considered reasonable and lawful where police have probable cause to believe that a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *People v. Veal*, 2017 IL App (1st) 150500, ¶ 12. During a lawful traffic stop, the driver (*Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)) and passengers (*Maryland v. Wilson*, 519 U.S. 408, 415 (1997)) may be ordered out of the vehicle, pending the completion of the stop, without violating the protections afforded by the fourth amendment. *People v. Sorenson*, 196 Ill. 2d 425, 433 (2001). Police officers may also question both the driver and passengers during the stop. Those questions need not be related to the purpose of the traffic stop as long as the unrelated inquiries do not " 'measurably extend the duration of the stop.' " *Cummings*, 2016 IL 115769, ¶ 6 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). The fourth amendment, however, prohibits an officer from *prolonging* a traffic stop with inquiries outside of the mission of the traffic stop unless the officer has reasonable suspicion for those unrelated inquiries. *Id.* ¶ 7 (citing *Rodriguez v. United States*, 575 U.S. ___, ___, 135 S. Ct. 1609, 1615 (2015)). In addition, the driver and passengers may be subjected to a protective pat-down or frisk only where an officer has reasonable suspicion to believe that the individual being frisked is armed and dangerous. *Johnson*, 555 U.S. at 327.

¶ 22 Here, defendant does not dispute that the initial seizure was lawful because the vehicle in which he was a passenger was pulled over for a traffic violation—namely, his failure to wear a seatbelt. See generally 625 ILCS 5/12-603.1(a) (West 2016) (requiring each driver and passenger in a moving vehicle operating on Illinois roadways to "wear a properly adjusted and fastened seat safety belt"). Instead, the basis for his claim of constitutional violation is that Officer Cain's questioning of him occurred after the basis for the lawful stop had been "completed," which impermissibly prolonged the traffic stop. In support, defendant submits that Officer Cain's body

camera footage of the traffic stop shows that he did not begin questioning him until after the driver had been handcuffed and placed under arrest for driving with a suspended license.

¶ 23    It is well established that " 'a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.' " *Harris*, 228 Ill. 2d at 235 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). For example, a lawful seizure "can become unlawful *** 'if it is prolonged beyond the time reasonably required' to complete the traffic stop." *Id.* at 235-36 (quoting *Caballes*, 543 U.S. at 407). As a general rule, "the return of paperwork—*e.g.*, a driver's license, vehicle registration, or proof of insurance—signifies the conclusion of the stop, as it conveys to the driver that he is free to leave, and any ensuing search must be supported on grounds independent of the initial violation prompting the stop." *Veal*, 2017 IL App (1st) 150500, ¶ 14; see *Johnson*, 555 U.S. at 333 ("Normally, the [traffic] stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave."). Where, however, a traffic stop results in the driver's arrest, the arrest itself does not, by itself automatically signify the end of the stop; rather, a traffic stop will be deemed to have ended when reasonable persons "would understand that they were free to leave and the police no longer needed to control the scene." *Veal*, 2017 IL App (1st) 150500, ¶ 17.

¶ 24    This court's decision in *Veal* illustrates this principle. In *Veal*, police officers effectuated a traffic stop on a vehicle after observing that the two backseat passengers, one of whom was defendant, were not wearing seatbelts. *Id.* ¶ 4. The officers first ordered the driver out of the vehicle, frisked him, and handcuffed him as he stood outside of the vehicle. *Id.* ¶ 6. The officers then ordered the defendant out of the vehicle. When he exited, an officer observed a handgun underneath where defendant had been sitting. *Id.* The officer recovered the weapon and arrested

the defendant. *Id.* The defendant filed a motion to suppress contesting the validity of the search and seizure; however, his motion was denied, and he was ultimately convicted of the offense of being an armed habitual criminal. *Id.* ¶¶ 7-8.

¶ 25    On appeal, the defendant sought reversal of his conviction, arguing that the circuit court erred in denying his motion to suppress. *Id.* ¶ 10. Specifically, he argued that, after the driver had been handcuffed, the stop had concluded and the officers had no separate independent basis to order him out of the vehicle. *Id.* ¶ 13. This court, however, disagreed that the arrest of a driver automatically signifies the end of a traffic stop and explained that, in accordance with fourth amendment precedent, the conclusion of a traffic stop depends upon the facts and circumstances of each case and whether, under those unique circumstances, a reasonable person would feel free to leave and the police no longer need to control the scene. *Id.* ¶ 17. Applying that rationale, we concluded that a reasonable person in the defendant's position would not have believed that he was free to leave immediately following the driver's arrest. *Id.* ¶ 18. We observed that the traffic stop was initiated as a result of the defendant's failure to wear a seatbelt, which is petty offense subject to a fine. *Id.* Accordingly, although the officer began the traffic stop by restraining the driver, "that alone did not suggest that [the defendant] would escape ticketing" or that he was free to leave. *Id.* Therefore, because the traffic stop was ongoing when the officer ordered the defendant out of the vehicle, we concluded that his search and seizure did not run afoul of the fourth amendment. *Id.* ¶ 19.

¶ 26    Here, as in *Veal*, the traffic stop was initiated due to defendant's failure to wear a seatbelt. Although there is no dispute that Officer Cain first spoke to defendant after the driver had been placed in handcuffs due to his failure to possess a valid driver's license, we do not find that the arrest of the driver suggested that the police had secured the scene and that defendant was free to

leave. Indeed, the body-cam footage reveals that at the time Officer Cain first posed questions to defendant, the officers were awaiting a transport vehicle for the driver and had to arrange for the vehicle in which defendant remained sitting to be impounded. A reasonable person in defendant's position, whose very conduct had caused the traffic stop, would not have felt free to leave simply because the driver had been handcuffed. Although the questions that Officer Cain asked defendant did not pertain to his failure to wear a seatbelt, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop *** do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333. Because the inquiries occurred during the course of an active traffic stop as the officers were still working to secure the scene and impound the car, we conclude that defendant's search and seizure were not conducted in violation of his fourth amendment rights. Therefore, the circuit court did not err in denying his motion to suppress.

¶ 27     In so finding, we are unpersuaded by defendant's reliance on the Fourth District's decision in *People v. Staple*, 345 Ill. App. 3d 814 (2004). In that case, the defendant was one of two passengers in a vehicle driven by his brother that was stopped when an officer observed that the vehicle was not equipped with any visible license plates or registration. *Id.* at 816. During the traffic stop, all the occupants of the vehicle produced their identifications and the officer discovered that the driver's license had been suspended and that there was an outstanding warrant for his arrest. *Id.* After a second officer arrived on scene, the driver was arrested, handcuffed, and placed in the back of the second squad car. *Id.* Following the driver's arrest, the first officer reapproached the vehicle, informing defendant that his brother had been arrested and that he would be searching the vehicle and all the occupants. *Id.* at 816-17. Prior to searching defendant, the officer asked if defendant had any weapons or contraband on his person. Defendant responded that

he had a bottle of Crown Royal in his pocket. *Id.* at 817. The officer retrieved the bottle and discovered cannabis during a pat-down of defendant's person. *Id.* at 817-18. The defendant's pretrial motion to suppress was denied, and he was convicted of possession of cannabis. *Id.* at 818.

¶ 28 On appeal, the Fourth District reversed the defendant's conviction, finding that the circuit court erred in denying the defendant's motion to suppress. The court reasoned that the traffic stop was "over" when the driver was arrested and the passengers were ordered out of the vehicle. *Id.* at 820. The court then found that the officer's questioning and frisk of the defendant was improper because they were not related to the underlying purpose of the stop and were not supported by reasonable suspicion of criminal activity; rather, the officer's questioning "clearly prolonged [the] defendant's detention and did so beyond the completion of the purpose of the stop and changed the nature of the stop." *Id.* at 821. As such, the Fourth District concluded that the circuit court erred in denying the defendant's motion to suppress and reversed his conviction. *Id.*

¶ 29 Unlike the traffic stop at issue in *Staple*, the traffic stop in this case was the result of defendant's own conduct—specifically, his failure to wear a seatbelt. Although defendant suggests this distinction is not relevant, we do not believe that a reasonable person in defendant's position, whose conduct resulted in the traffic stop, would feel free to leave absent interaction with the officers who initiated the stop. Moreover, unlike the questioning in *Staple*, which occurred after the driver had been handcuffed and placed in the back of a second transport vehicle that had arrived at the scene, the questioning in the instant case occurred while the officers were awaiting the arrival of a transport vehicle and as defendant remained seated in the vehicle that was going to be impounded. Indeed, defendant had not yet been ordered out of the vehicle when he was questioned and admitted to possessing marijuana. Ultimately, viewing the totality of the circumstances, we find that Officer Cain's questioning of defendant occurred while the traffic stop was ongoing.

Therefore, we conclude that the Fourth District's decision in *Staple* does not compel a different result.

¶ 30                                    III. CONCLUSION

¶ 31    In conclusion, we reiterate that the vehicle stop in the instant case was reasonable as it was based on defendant's failure to wear a seatbelt, which was a violation of the Illinois Vehicle Code as well as a petty offense subject to a fine. 625 ILCS 5/12-603.1(a), (d) (West 2016). Given that the Illinois Vehicle Code violation provided the police with probable cause to believe that a traffic violation occurred, the police were justified in curbing the vehicle (*Whren*, 517 U.S. at 810) and questioning both of the occupants (*Cummings*, 2016 IL 115769, ¶ 6). Although Officer Cain's questioning of defendant occurred after the driver had been handcuffed due to his failure to have a valid license, the arrest of the driver did not, in this case, signify the conclusion of the traffic stop. See *Veal*, 2017 IL App (1st) 150500, ¶ 17 (recognizing that the arrest of a driver does not necessarily conclude a traffic stop; rather, a traffic stop will be found to have ended when reasonable persons "would understand that they were free to leave and the police no longer needed to control the scene"). At the time of the questioning, the officers were still working to control the scene of the traffic stop, as they were awaiting a transport vehicle for the driver and had to arrange for the vehicle, in which defendant remained seated, to be impounded. Based on those facts, a reasonable person in defendant's position would not have felt free to leave. The mere fact that the questions posed to defendant were not related to defendant's failure to wear a seatbelt did not convert the lawful seizure into an unlawful encounter because the inquiries did not measurably extend the stop's duration; rather, they occurred while the stop was ongoing. *Johnson*, 555 U.S. at 333; *Cummings*, 2016 IL 115769, ¶ 7. Defendant does not dispute that the admission that he was in possession of marijuana justified Officer Cain's decision to order him out of the vehicle so he

could recover the marijuana. Moreover, defendant raises no argument disputing the validity of Officer Cain's decision to frisk him for weapons to ensure officer safety. Accordingly, based on the foregoing, we conclude that the search and seizure of defendant in this case did not run afoul of his rights under the fourth amendment. The circuit court thus properly denied defendant's pretrial motion to suppress.

¶ 32     The judgment of the circuit court is affirmed.

¶ 33     Affirmed.

_____

**No. 1-18-1616**

_____

| | |
|---|---|
| **Cite as:** | *People v. Sutton*, 2020 IL App (1st) 181616 |

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-0767501; the Hon. Stanley J. Sacks, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Maria A. Harrigan (Jace Carlton, law student) of DePaul University Legal Clinic, of Chicago, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |

_____